**Jeffrey D. TILLEY, Petitioner–Appellant,**

v.

**Norris McMACKIN, Respondent–Appellee.**

**No. 92–3352.**

United States Court of Appeals, Sixth Circuit.

Argued Jan. 26, 1993.

Decided March 24, 1993.

Timi J. Townsend (argued and briefed), Public Defender's Office, Ohio Public Defender Com'n, Columbus, OH, for petitioner-appellant.

Donald G. Keyser, Asst. Atty. Gen. (argued and briefed), Office of the Atty. Gen. of Ohio, Columbus, OH, for respondent-appellee.

Before: MARTIN, MILBURN, and NORRIS, Circuit Judges.

ALAN E. NORRIS, Circuit Judge.

Jeffrey Tilley appeals the district court's denial of his petition for a writ of habeas corpus, and renews his argument that the state of Ohio presented insufficient evidence to enhance his sentence for aggravated robbery under the Ohio firearm specification statute, Ohio Rev.Code Ann. § 2929.71(A) (Anderson 1991).[1]

Tilley is incarcerated in the Ohio prison system as the result of having been convicted of three counts of aggravated robbery. In addition to the sentences he received on the robbery counts themselves, he was also sentenced to an additional three years of actual incarceration for possession of a firearm during the robbery offenses. It is his conviction on the firearms specification that Tilley challenges in his petition for a writ.

*Facts*

Early in the morning of October 2, 1984, three young women, Debbie Preston, Susan Bowers, and Debbie Black, were driving through Springfield, Ohio, when three men in an unmarked car pulled up next to theirs, flashed a badge, identified themselves as police officers, and instructed the women to pull over. When they did so, two of the men walked up to their car and asked them for identification. Preston, doubting that they were police officers, convinced her companions that they should refuse the men's demand that they exit the

car until the men summoned a marked police cruiser to the scene. The men said they would call for a cruiser and, a few minutes later, one of them, Ronald Tooson, returned to say that a cruiser was on its way. Then, according to Preston's trial testimony, Tooson "jumped back away from the car ... and said that we had a gun in the car and he pulled a gun out of his jacket like part way and we told them that we didn't have a gun and they acted like they were calmed down a little bit." When asked to describe the gun in greater detail, Preston responded:

A. He acted like he thought we had a gun; and when he jumped back, he jumped up on like a concrete ledge that was there beside the driveway and he just—he had like a sweat jacket on or something and he pulled it out and you could see just what he had in his hand and I could tell that it was a gun because I could see enough of it to know. I have seen guns before and it was just out for a split second. It wasn't out very long at all.

Q. Did you see enough of it to recognize what kind of gun it was?

A. No, I didn't. It was a small gun.

Q. A handgun?

A. Yes.

Q. As opposed to a rifle?

A. Yes.

Q. You say you've seen guns. Do you have any relatives that are involved with guns?

A. Yes, my father's a deputy sheriff.

Q. Could you describe the color of this gun?

A. It was a dark gun.

Q. Dark?

A. Yes.

Q. And just how much of the gun were you able to see?

1. Section 2929.71 provides in relevant part:
   (A) The court shall impose a term of actual incarceration of three years in addition to imposing a ... term of imprisonment [for committing a felony] ... if....
   ....

   (2) The offender also is convicted of, or pleads guilty to, a specification charging him with having a firearm on or about his person or under his control while committing the felony.

A. I didn't see the whole thing. I just saw what more or less would have been in his hand and part of the barrel. Is that what it would be called?

Q. Well, the part that the bullet goes out in?

A. Yes.

Q. Did you see part of that?

A. Maybe an inch of it.

Q. Did you see the part where the trigger is?

A. Yes, I did.

Q. How was his finger positioned?

A. Yes.

Q. Was it on the trigger?

A. Yes.

One of the men managed to reach into the car and unlock the electric door locks. The men took the women's purses and fled after an unsuccessful attempt to handcuff Preston.

The women reported the incident to police, who a short time later located an abandoned automobile which matched the description given by the women, and apprehended the thieves. Smith & Wesson handcuffs found in the car were later identified through their serial number as having been issued to Ohio Park Ranger John Edwards. Ranger Edwards' handcuffs, as well as his service revolver and park ranger badge, had been stolen from his automobile several months earlier. The prosecution's theory of the case was that these items were the same badge, gun, and handcuffs which the three men had used to rob the women.

Tilley's conviction was affirmed by the Ohio Court of Appeals and the Ohio Supreme Court declined review. Tilley then filed his petition for a writ of habeas corpus in federal district court. He contended that there was insufficient evidence to support his conviction on the firearms specification because the state failed to prove that Tooson had an "operable" firearm. For purposes of the firearms specification, a firearm is defined as follows:

(B)(1) "Firearm" means any deadly weapon capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propel-lant. "Firearm" includes an unloaded firearm, and any firearm which is inoperable but which can readily be rendered operable.

(2) When determining whether a firearm is capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant, the trier of fact may rely upon circumstantial evidence, including, but not limited to, the representations and actions of the individual exercising control over the firearm.

Ohio Rev.Code Ann. § 2923.11(B)(1) and (2).

Tilley maintains that the district court's reliance upon evidence that the pistol Tooson had was the one stolen from Ranger Edwards to prove operability is misplaced, since a trier of the facts could not conclude that the firearm was therefore operable without violating the Ohio rule of evidence prohibiting use of an inference which is drawn solely from another inference. *Hurt v. Charles J. Rogers Transp. Co.*, 164 Ohio St. 329, 130 N.E.2d 820 (1955) (syllabus paragraphs one and two). *See McDougall v. Glenn Cartage Co.*, 169 Ohio St. 522, 160 N.E.2d 266 (1959); *State v. Ebright*, 11 Ohio App.3d 97, 463 N.E.2d 400 (10th Dist.1983). We need not address the inference upon an inference rule, since there was sufficient evidence to prove operability even without the evidence concerning Ranger Edwards' ownership of the pistol.

### Analysis

When a state prisoner challenges his state court conviction on the ground that the evidence cannot fairly be deemed sufficient to have established guilt beyond a reasonable doubt, he states a claim under 28 U.S.C. § 2254 that he is being held in violation of the Due Process Clause of the Fourteenth Amendment. *Jackson v. Virginia*, 443 U.S. 307, 313–18, 99 S.Ct. 2781, 2785–87, 61 L.Ed.2d 560 (1979); *In re Winship*, 397 U.S. 358, 374, 90 S.Ct. 1068, 1078, 25 L.Ed.2d 368 (1970). The appropriate standard by which the federal habeas court reviews the claim is whether, after viewing all the evidence in the light most favorable

to the prosecution, any rational trier of the facts could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. at 319, 99 S.Ct. at 2789.

 Under Ohio law, operability of the firearm which is the basis of the specification is an element which must be proven beyond a reasonable doubt. Although the firearm may not be available to the prosecution for test firing or admission into evidence, the fact of operability nevertheless may be established by circumstantial evidence. This may include, for example, testimony that a gunshot was heard or that shell casings or bullet holes were found. It also may include evidence that can be viewed as an acknowledgement by the individual exercising control over the firearm that it was operable, through testimony about how he used the gun, his statements, and his conduct. *See* Ohio Rev.Code Ann. § 2923.11(B)(2) (Anderson 1991); *State v. Murphy,* 49 Ohio St.3d 206, 551 N.E.2d 932 (1990); *State v. Gaines,* 46 Ohio St.3d 65, 545 N.E.2d 68 (1989). In *Murphy,* the Ohio Supreme Court held that a jury could infer that a firearm was operable on the basis of statements made by the defendant and the manner in which he used the gun. In that case, a store clerk and a customer testified that the defendant announced a holdup and produced a derringer; that he waved the gun back and forth and pointed it at both witnesses; and that he said he was not kidding and would kill the clerk if he was not given the money he sought. *Murphy,* 49 Ohio St.3d at 208, 551 N.E.2d 932.

Tilley does not contend that this Ohio evidence rule allowing the use of circumstantial evidence to prove the fact of operability offends the Constitution. *See Moore v. Duckworth,* 443 U.S. 713, 99 S.Ct. 3088, 61 L.Ed.2d 865 (1979). Instead, he contends that the evidence against him did not satisfy even the Ohio standard. We disagree, since we conclude that there was sufficient circumstantial evidence to establish operability beyond a reasonable doubt.

Preston testified that Tooson had a handgun; that she was familiar with guns; that Tooson had his finger on the trigger; and that he pulled the gun out of his jacket in a defensive reaction to his belief that the women had a gun. From her testimony that she was familiar with guns and she saw Tooson holding a handgun, a jury could conclude that he in fact had a handgun. From her testimony that he had his finger on its trigger and used it in a defensive fashion in response to a perceived threat of danger, the jury reasonably could infer that the handgun was operable, since Tooson treated it as though it were. Accordingly, the evidence did satisfy the *Jackson* standard.

For these reasons, the order of the district court is affirmed.