**Evans OB'SAINT, Petitioner,**

v.

**WARDEN, TOLEDO CORRECTIONAL INSTITUTION, Respondent.**

**Case No. 1:08–cv–640.**

United States District Court,
S.D. Ohio,
Western Division.

Dec. 21, 2009.

Evans A. Ob'Saint, Toledo, OH, pro se.

Hilda Rosenberg, Office of the Ohio Attorney General, Cincinnati, OH, for Respondent.

## ORDER

SANDRA S. BECKWITH, Senior District Judge.

Petitioner Evans Ob'Saint has filed objections to the Magistrate Judge's Report and Recommendation concerning Ob'Saint's petition for habeas corpus pursuant to 28 U.S.C. § 2254. The Magistrate Judge has recommended that this Court deny all claims raised in the petition. (Doc. 20)

## FACTUAL BACKGROUND

Ob'Saint was indicted by an Ohio grand jury for aggravated robbery, in violation of Ohio Rev.Code 2911.01(A)(1), with two firearm enhancement specifications. He was also charged with one count of robbery under Ohio Rev.Code 2911.02(A)(2). As found by the Ohio Court of Appeals in rejecting Ob'Saint's direct appeal,

... [Ob'Saint] entered a PNC bank and handed a teller a note that read, "Read silently. If you look at me again, I'll shoot. If you activate an alarm, my time piece will vibrate and I'll shoot you first, trust me. Quickly remove any dye packs and give me all the money. Hand me back that letter, smile, say thank you and walk to the employee's bathroom. Don't turn around. Don't try me or you'll be sorry forever.

The teller did not see Ob'Saint make any movements to indicate that he was holding or reaching for a gun, but she believed that he had a gun and complied with his instructions. Ob'Saint left the bank with money and a GPS tracking device that had been planted in a currency pack. The police located and arrested him later that day, as he was taking the cash out of a vehicle. Ob'Saint made a full confession and was cooperative with the investigating authorities, but he denied actually having a gun. He consented to a search of his apartment, where deputies found the clothing he wore during the robbery and the note he had given to the teller. No gun or any evidence of a firearm was ever located.

Ob'Saint waived a jury, and at his trial the state presented two witnesses—the police investigator and the bank teller. Ob'Saint argued before trial and in his motion for acquittal that there was insufficient evidence to support the aggravating element of robbery as well as the firearm specifications. The trial court denied his motion for acquittal and found him guilty

on all charges and specifications. At sentencing, the counts and the specifications were merged, resulting in a total sentence of six years on the aggravated robbery, with a three-year consecutive sentence on the firearm specification. Ob'Saint's appeal and his state court post-conviction petitions were all unsuccessful.

Ob'Saint's petition under 28 U.S.C. § 2254 raises two grounds for relief. He contends that his conviction under Ohio's firearm specification statute is based upon insufficient evidence that he possessed an operable firearm during the robbery, thereby violating his due process rights. He also contends he was denied due process because the state courts disregarded the bank teller's testimony that she did not see a weapon nor view any conduct indicative of Ob'Saint's possession of a weapon.

The Magistrate Judge concluded that neither ground for relief is meritorious. Regarding the first claim, the Magistrate Judge cites the Ohio appellate court's exhaustive review of Ohio law concerning the type and amount of evidence necessary to prove aggravated robbery with firearm specifications. Applying the principle that a federal habeas court independently reviews the state court record to analyze a claim of sufficiency of the evidence, the Magistrate Judge concluded that the evidence was sufficient to prove the charges against Ob'Saint beyond a reasonable doubt. (Doc. 20 at p. 15.)

The Magistrate Judge also found that Ob'Saint's second claim lacks merit, because the state court explicitly addressed the bank teller's testimony that she did not see a gun nor observe any conduct suggesting a gun. The Ohio Court of Appeals concluded that she did not have the opportunity to see if Ob'Saint was armed, and that her lack of observation did not establish a reasonable doubt whether or not Ob'Saint had a gun in his possession when he robbed the bank.

## DISCUSSION

Under 28 U.S.C. § 2254(d), Ob'Saint must establish that the result reached by the state court in affirming his conviction and sentence enhancement was contrary to clearly established federal law, or resulted from the state court's unreasonable determination of the facts and evidence presented at his trial.

█ A claim of insufficient evidence that rises to the level of a constitutional due process violation requires Ob'Saint to establish that no rational trier of fact could have found him guilty beyond a reasonable doubt of the essential elements of the firearm specification. See *Jackson v. Virginia*, 443 U.S. 307, 318–319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). A federal habeas court does not reweigh the evidence adduced at trial, nor judge anew the credibility of witnesses. The state need not have ruled out all other scenarios except that of guilt beyond a reasonable doubt, in order to satisfy the due process standard. If there are conflicts in the evidence or conflicting inferences arising from the facts, the court must presume that the trier of fact resolved those conflicts in favor of the state, and defer to that decision. *Id.* at 326, 99 S.Ct. 2781.

Ohio Rev.Code 2911.01(A)(1), of which Ob'Saint was found guilty, defines aggravated robbery: "(A) No person, in attempting or committing a theft offense … or in fleeing immediately after the attempt or offense, shall do any of the following: (1) Have a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it[.]" The Ohio firearm sentence enhancement specification statute requires the state to prove "that the offender had a firearm on or about the offender's person or under the offender's control while committing the offense and

displayed the firearm, brandished the firearm, indicated that the offender possessed the firearm, or used it to facilitate the offense." Ohio Rev.Code 2941.145(A). "Firearm" is defined as

> ... any deadly weapon capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant. "Firearm" includes an unloaded firearm, and any firearm that is inoperable but that can readily be rendered operable.

The same statute provides that the factfinder may rely upon circumstantial evidence to determine whether a firearm was operable, including any "representations and actions of the individual exercising control over the firearm." Ohio Rev.Code 2923.11(B)(1) and (2).

In *State v. Thompkins*, 78 Ohio St.3d 380, 678 N.E.2d 541 (1997), the Ohio Supreme Court rejected a defendant's argument that the state had failed to prove that the gun he displayed during a robbery was operable as required by the specification statute. The Supreme Court held that the elements of the statute

> ... can be proven beyond a reasonable doubt by circumstantial evidence. In determining whether an individual was in possession of a firearm and whether the firearm was operable or capable of being readily rendered operable at the time of the offense, the trier of fact may consider all relevant facts and circumstances surrounding the crime, which include any implicit threat made by the individual in control of the firearm.

*Id.*, Syllabus ¶ 1. Thompkins robbed a bakery by pointing a gun directly at the store clerk, telling her he was committing a "holdup" and to be "quick, quick." She put $800 in a bag and gave it to Thompkins, who fled the store. The gun was never recovered, and the · clerk testified that Thompkins never threatened to shoot her. The Supreme Court found that since

Thompkins brandished a gun and "implicitly but not expressly" threatened to shoot the clerk if she did not cooperate, the implicit threat can be sufficient to prove that the firearm was operable. *Id.* at 384–385, 678 N.E.2d 541.

As the Magistrate Judge's Report discusses, numerous Ohio appellate decisions have addressed a variety of factual scenarios in analyzing the sufficiency of the evidence supporting a firearm specification conviction. In *State v. Belcher*, 2007–Ohio–6317, 2007 WL 4200668 (8th Dist. App.2007), the victim felt what she believed to be a gun pressing against her back, testified that she saw a gun weighing down the front of her attacker's hooded jersey, and that the attacker told her "I have a gun, bitch, let go of the purse." That testimony was sufficient to support both elements of the firearm enhancement specification despite the fact that the victim did not actually see a gun, defendant did not threaten to shoot her, and a gun was never found or produced at trial. Similarly, in *State v. Jeffers*, 143 Ohio App.3d 91, 757 N.E.2d 417 (1st Dist.App. 2001), the robbery defendant kept his hand in his pocket and told the store clerk that he would "blow [her] head off" if she did not comply with his demand for money. That evidence was sufficient to prove both elements of the firearm specification, despite the fact that the defendant never displayed a gun.

And in *State v. Greathouse*, 2007–Ohio–2136, 2007 WL 1297181 (2nd Dist.App. 2007), a robbery and rape victim testified that defendant approached her from behind, poked her in the back and forced her into the car, telling her he had a gun and would shoot her and dump her body. The court affirmed his conviction on a firearm specification even though the victim never saw a gun, as the circumstantial evidence surrounding the crime was sufficient to

prove the specification beyond a reasonable doubt. See also *State v. Green*, 117 Ohio App.3d 644, 691 N.E.2d 316 (1st Dist. App.1996), where the defendant had his hand in a large envelope while telling a bank teller, "Now this is a stickup, and if you press any buttons I'll blow your brains out." He also threatened other tellers not to move while keeping his hand in his pocket, threatening he would "blow [their] brains out." The court held that his threats made with his hand either concealed or "used in a manner consistent with having a concealed gun" resulted in the victims' belief that he was armed, which was sufficient to prove aggravated robbery by use of a deadly weapon under the totality of the circumstances. (This case did not address a firearm enhancement.)

◼ Ob'Saint argues that the facts of his case differentiate him from the defendants in these and similar Ohio cases. He argues that there is no evidence that he acted to create an impression that he had a gun. The teller did not see his hand in his pocket, any bulge in his clothing, or any other suggestion that he actually possessed a gun. He argues that the threats in his note, the only evidence in the record about a firearm, are insufficient to establish both possession and operability of a firearm.

The Ohio Court of Appeals concluded that Ob'Saint's note, stating that he had a gun and making repeated references to shooting the teller, was sufficient circumstantial evidence to support both his conviction and the firearm specification:

> In essence, the trial of this case was about resolving conflicting evidence. In the note that Obsaint gave to the teller, he told her that he had a gun. In his statement to the police, he said he did not. As with any such case, it was left to the trier of fact to resolve this conflict.

*State v. Obsaint*, 2007–Ohio–2661, 2007 WL 1574618 (1st Dist.App.2007) at ¶ 20. The court noted that the factfinder (the trial judge, as Ob'Saint waived a jury) rejected his reasonable argument that he was telling the truth when he said he did not have a gun, because he had been truthful about everything else in his confession to the police. In addition, as the Magistrate Judge noted, Detective Pitchford testified at Ob'Saint's trial that Ob'Saint had ample time to get rid of any gun that he had with him during the robbery, and that in Pitchford's experience, getting rid of a gun used to commit a crime is one of the first things an offender is likely to do. (See Doc. 13, Exhibit 26, Trial Trans. at 39–40.) The trial court resolved the conflicts in the evidence, including Ob'Saint's own statements, against Ob'Saint and in favor of the state. The firearm specification statute includes as an element that the offender "indicate" that he has a firearm. Ob'Saint's note to the bank teller was an unmistakably clear "indication" that he possessed a firearm and he would use it if his demands were not met, which under the cases discussed above is sufficient evidence of possession and the firearm's operability.

Ob'Saint argues that an "indication" of firearm possession, to satisfy the reasonable doubt standard, must be based upon more than his statements. He argues there must be a statement **plus** some affirmative act or conduct which causes a victim to perceive the actual presence of a firearm, such as keeping his hand in his pocket, or pushing something that feels like a gun against a victim. The Ohio court of appeals squarely rejected this argument, noting that nothing in prior Ohio cases nor in the specification statute required proof of an "overt act" in addition to a threat made by the defendant.

In his written objections, Ob'Saint cites a number of federal cases concerning convictions under the federal bank robbery statute, 18 U.S.C. § 2113(a) and (d), to argue that his written threats to the teller are insufficient. He suggests that these federal cases establish that only when a threat is coupled with brandishing, use or actual physical possession of a firearm, is the evidence sufficient for a conviction under Ohio's firearm specification statute. Those cases do not assist Ob'Saint, however, because the federal statute differs from the Ohio specification statute. For example, *U.S. v. Ray*, 21 F.3d 1134 (D.C.Cir. 1994) was an appeal from a conviction for aggravated armed bank robbery under 18 U.S.C. § 2113(d). That section applies if the evidence establishes that the robber "assaults any person, or puts in jeopardy the life of any person by the use of a dangerous weapon or device ...". The court found that Section 2113(d) means what it says, that the prosecution must prove actual **use** of a dangerous weapon. And in *U.S. v. Perry*, 991 F.2d 304 (6th Cir.1993), a robbery defendant opened his suit jacket in front of the teller, as though he was reaching for something. The teller was afraid he was reaching for a gun, but never saw a gun or another weapon. There was evidence at the trial that defendant had a wooden carved gun with him during the robbery, but that it had gotten stuck in his clothes. The Sixth Circuit vacated his conviction under Section 2113(d), because concealed possession of a non-genuine gun is insufficient to establish "use" of a dangerous weapon under that statute. In contrast, the Ohio specification statute does not require actual use of a weapon that jeopardizes anyone's life. It only requires evidence that a defendant "indicated that the offender possessed the firearm."

Ob'Saint also cites *McLaughlin v. U.S.*, 476 U.S. 16, 106 S.Ct. 1677, 90 L.Ed.2d 15 (1986), but that case simply affirmed the lower courts' conclusions that an unloaded handgun can be a "dangerous weapon" for purposes of Section 2113(d).

■ Ob'Saint then contends that the state court's conclusion that both possession and operability of a firearm were sufficiently proved by Ob'Saint's note and the teller's testimony, impermissibly "stacks" an inference upon an inference to prove two independent elements of the offense. He cites *State v. Macias*, 2003–Ohio–1565, 2003 WL 1596472 (2nd Dist.App.2003), and *State v. Kovacic*, 2003–Ohio–5219, 2003 WL 22235360 (Ohio 11th Dist.App.2003). *Macias* does not assist Ob'Saint; the victim in that case testified that she thought she saw something that might have been a gun in the defendant's hand, but she never saw a gun and the defendant made no threat to shoot her when he demanded her money. The court affirmed his conviction on a firearm enhancement, finding that the victim's testimony was legally sufficient to sustain the jury's verdict. (The *Macias* court did conclude that the manifest weight of the evidence required vacating defendant's firearm specification conviction, particularly in light of testimony of several of his accomplices that defendant had a toy gun with him during the robbery, and they could not believe that anyone would think it was a real gun. Even if Ob'Saint had presented such a claim here, a manifest-weight-of-the-evidence claim is a state law issue and not cognizable in this habeas proceeding.)

In *Kovacic*, a robbery defendant demanded money from a convenience store clerk, told the clerk that he had a gun while his hand was in his pocket, and took the money the clerk handed to him. He was convicted and on appeal argued the state failed to prove the firearm specification. The Court of Appeals vacated his conviction, holding that at best, the state demonstrated that defendant made a state-

ment that he had a "gun." That was insufficient to prove that defendant had a "firearm." The court also stated that to infer possession of a firearm from his statement that he had a gun, "... would require us to pile an inductively weak inference upon an even weaker inference. Such is an exercise in undue speculation." *Id.* at ¶ 20. While the evidence supported his aggravated robbery conviction, it was insufficient to prove the firearm specification. The court also rejected the suggestion that defendant's statement and actions were "implicitly threatening" and that operability of the firearm could therefore be inferred.

The dissent in that case noted that Ohio's specification statute expressly permits reliance on circumstantial evidence to prove possession **and** operability, including any implicit threats made by the defendant. Given all the circumstances (defendant entered the store in the early morning hours, demanded money, and said he had a gun), the cashier understood what defendant implied: "give me the money or I will shoot you." [1]

*Kovacic* has been criticized by other Ohio courts for applying an unduly stringent evidentiary standard. In *State v. Watkins*, 2004–Ohio–6908, 2004 WL 2931008 (8th Dist.App.2004), defendant approached the victim at a bus stop late at night, walked behind him, and put what the victim said felt like a gun into his side. Defendant said "you know, what it is," and forced the victim against the bus shelter while rifling his pockets. Defendant got into a car that pulled up and left the scene. The victim never saw a gun, and defendant never explicitly said he had a gun. The police stopped the car a short time later and found the victim's credit cards, a gun holster, and a loaded gun outside the car's

passenger door. Watkins was convicted of aggravated robbery with a firearm specification, which he challenged on appeal. The court of appeals reviewed the various cases discussing the state's evidentiary burden, noting some differing interpretations on how much circumstantial evidence is required. The court acknowledged *Kovacic*, but found that numerous other Ohio courts routinely apply a less stringent evidentiary standard. The *Watkins* court found that *State v. Knight*, 2004–Ohio–1941, 2004 WL 830043 (2nd Dist.App.2004), was most directly relevant to *Watkins'* case. In *Knight*, the store clerk testified that defendant had both hands in his jacket pockets when he came into the store, demanding that she open the cash register. The clerk believed that he had a gun and gave him the money because of her belief. *Knight* held that

> ... both a weapon's existence and its operability may be inferred from the facts and circumstances. Suffice it to say, there may be circumstances where the defendant's conduct alone makes clear that he holds a hidden weapon and that he could use it if the victim fails to comply with his instructions.

*Watkins* at ¶ 20, quoting from *Knight*. The court therefore affirmed *Watkins'* conviction.

Similarly, in *State v. Haskins*, 2003–Ohio–70, 2003 WL 99572 (6th Dist.App. 2003), the court affirmed a conviction for aggravated robbery and a firearm specification. Defendant approached a gas station clerk and demanded money; when the clerk thought he was joking, defendant said "Are you going to give me the money or do I have to pull this pistol out of my pocket?" The clerk never saw a gun and no gun was ever found, but she gave de-

---

1. The Ohio Supreme Court accepted the state's appeal from this decision, but then sua sponte dismissed the appeal as improvidently granted. See *State v. Kovacic,* 103 Ohio St.3d 1201, 816 N.E.2d 1073 (2004).

fendant the money from her register drawer. Although the clerk did not see a gun, defendant's threat to use one was enough under *Thompkins* for the jury to conclude that defendant had an operable firearm. See also, *State v. Bowman,* 2006–Ohio–6146, 2006 WL 3365506 (10th Dist.App. 2006) at ¶ 25, noting: "Moreover, a defendant may be convicted of a firearm specification if, in the course of the crime, the defendant states he or she possesses a gun and will use it, even if no one sees the gun, the gun is never produced at trial, and the gun therefore cannot be tested to determine operability ..." (internal citations omitted).

*State v. Kovacic* does not follow the majority of Ohio cases addressing the necessary quantum of evidence. Moreover, the defendant in *Kovacic* told the clerk he had a gun and demanded money. In contrast, Ob'Saint's note explicitly threatened to "shoot" the teller if she looked at him, or if she activated an alarm. He also warned her not to "try me or you'll be sorry forever." These explicit threats to "shoot" the teller are sufficient circumstantial evidence to prove the possession of an operable firearm.

Ob'Saint also relies on *State v. Gaines,* 46 Ohio St.3d 65, 545 N.E.2d 68 (1989), that described certain types of circumstantial evidence that are sufficient to prove firearm operability, such as "testimony as to gunshots, smell of gun powder, bullets, or bullet holes." *Id.* at 69, 545 N.E.2d 68. Ob'Saint suggests that only this sort of physical evidence would be sufficient to establish that he had an operable firearm. His reliance on *Gaines* is misplaced, however, because the Ohio Supreme Court's subsequent decision in *State v. Murphy,* 49 Ohio St.3d 206, 551 N.E.2d 932 (1990), specifically modified *Gaines,* and held that testimony of lay witnesses concerning all the circumstances surrounding the crime can be sufficient to meet the reasonable doubt burden of proof.

Finally, Ob'Saint cites *Tilley v. McMackin,* 989 F.2d 222 (6th Cir.1993), involving a habeas petitioner's challenge to his conviction under Ohio's firearm specification statute. The Sixth Circuit found that operability of a firearm is an element of that statute which must be proven beyond a reasonable doubt, an established principle recognized in all of the cases discussed above. The Sixth Circuit also specifically noted that the fact of operability may be established by circumstantial evidence, which may include "... evidence that can be viewed as an acknowledgment by the individual exercising control over the firearm that it was operable, through testimony about how he used the gun, his statements, and his conduct." *Id.* at 225, citing Ohio Rev.Code 2923.11(B)(2). The victim in that case testified she had seen defendant holding what she believed to be a handgun, with his finger on the trigger. That was sufficient for the jury to reasonably conclude that the gun was operable, because the defendant acted as though it was. Ob'Saint suggests that only if there was testimony from the bank teller about "how he used the gun," along with his "statements and his conduct" could his conviction be upheld. The Court disagrees, as *Tilley* supports the conclusion that the note to the teller, affirmatively stating that he would shoot her if she sounded an alarm or looked at him again, is sufficient evidence upon which a rational trier of fact could find Ob'Saint possessed an operable firearm.

After careful review of the cases and the record in this case, the Court concludes that the Ohio court's decision on this issue was not contrary to clearly established federal law, and was not the result of an unreasonable determination of the facts in light of the evidence presented.

Ob'Saint's second ground for relief argues that the state court failed to address the significance of the bank teller's testimony at his trial. He contends that the state court and the Magistrate Judge incorrectly found that the teller "did not have the opportunity to see whether or not petitioner was armed ...". (Doc. 22 at p. 7.) Ob'Saint labels this a false and misleading misrepresentation of the teller's actual testimony.

The bank teller testified that Ob'Saint approached her in the bank, and said he had received a letter in the mail. He handed her this "letter" which in fact was Ob'Saint's note, telling her to give him all the money and "to not look at him again." (Doc. 13, Exhibit 26, Trial Trans. at pp. 6–7.) The note, which was read into the record during the trial, plainly stated: "If you look at me again, I'll shoot." (*Id.* at 7.) The teller gave him the money, and as soon as she saw him walking towards the door, she went to the employee's bathroom as instructed. The teller freely admitted that she did not see him reach for anything, put his hand in his pocket, and that he never verbally threatened to shoot her or told her that he had a gun. All of his communication was through the note. The teller believed she probably read the note two or three times before it "actually kind of sunk in," but that she followed Ob'Saint's instructions. (*Id.* at 14) Those instructions included the warning not to look at Ob'Saint again.

In addressing Ob'Saint's argument that the state was required to prove an overt act on his part, the court of appeals found:

> Obsaint's note specifically instructed the bank teller not to look at him. Since the record indicates that she did as the note demanded, she did not have the opportunity to see if Obsaint was doing anything to confirm that he was armed. Under such circumstances, the absence of an overt act goes more to the weight rather than to the sufficiency of the evidence.

*State v. Obsaint,* 2007–Ohio–2661 at ¶ 17. This statement, contrary to Ob'Saint's arguments, accurately reflects the trial testimony. The teller specifically testified that she followed Ob'Saint's written instructions. Ob'Saint again relies on *U.S. v. Perry,* discussed above, involving the federal bank robbery statute. The court found that the evidence against Perry was insufficient because, at best, the bank teller saw him open his coat and was afraid that he might have a gun; the defendant never displayed or "used" a gun as the statute required. In contrast, the Ohio firearm specification statute does not require "use" of a firearm. *Perry,* and other cases discussing 18 U.S.C. § 2113(d), are therefore inapplicable here as well. The Court therefore overrules the second ground for relief.

As required by 28 U.S.C. § 636(b) and Federal Rule of Civil Procedure 72(b), the Court has conducted a de novo review of the record in this case. Upon such review, the Court finds that Ob'Saint's objections to the Magistrate Judge's Report and Recommendation are not well taken, and his objections are therefore overruled.

It is therefore ordered that the petition for a writ of habeas corpus is **DENIED** with prejudice. A certificate of appealability shall not issue because jurists of reason would not find it debatable whether this Court is correct in concluding that the petition for habeas relief should be denied. See *Slack v. McDaniel,* 529 U.S. 473, 484–85, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000).

This Court **CERTIFIES,** pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this Order would not be taken in good faith. Accordingly, Petitioner will not be granted leave to appeal in forma pauperis. See Fed. R.App. P. 24(a); *Kincade v.*

*Sparkman,* 117 F.3d 949, 952 (6th Cir. 1997).

SO ORDERED.

## REPORT AND RECOMMENDATION

TIMOTHY S. HOGAN, United States Magistrate Judge.

Petitioner, a state prisoner, brings this case *pro se* seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2254. This matter is before the Court on the petition (Doc. 1) and memorandum in support thereof (Doc. 6), respondent's return of writ and exhibits thereto (Doc. 13), and petitioner's response to the return of writ (Doc. 16), and on petitioner's motion for summary judgment (Doc. 17), respondent's memorandum in opposition (Doc. 18), and petitioner's reply memorandum. (Doc. 19).

## I. PROCEDURAL HISTORY

This case involves the following facts, as summarized by the First District Ohio Court of Appeals:[1]

{¶ 2} Obsaint entered a PNC bank and handed a teller a note that read, "Read silently. If you look at me again, I'll shoot. If you activate an alarm, my time piece will vibrate and I'll shoot you first, trust me. Quickly remove any dye packs and give me all the money. Hand me back that letter, smile, say thank you and walk to the employee's bathroom. Don't turn around. Don't try me or you'll be sorry forever."

{¶ 3} The teller did not see him make any movements to indicate that he was holding or reaching for a weapon, but believed that he had a gun and complied. Obsaint left the bank with money and a GPS tracking device that had been included with the currency. The police

located and arrested him a short time later when the GPS device was traced to Obsaint's car. Obsaint made a full confession, but denied actually having a gun. He consented to a search of his apartment. Sheriff's deputies found the clothing he wore during the robbery and the note he had given to the teller. No gun was located.

{¶ 4} Obsaint was indicted for one count of aggravated robbery in violation of R.C. 2911.01(A)(1), with two gun specifications, and one count of robbery in violation of R.C. 2911.02(A)(2). On the day that the case was set for trial, Obsaint executed a written waiver of a jury trial....

\*

\*

\*

{¶ 10} The case proceeded to trial with the bank teller and a deputy testifying. The questioning by counsel for Obsaint centered on the issue whether there was any evidence, other than the note, that Obsaint had a gun. At the conclusion of the state's case, the trial was adjourned until the next day. In the interim, both sides submitted written argument on whether the note standing alone was enough to establish the use of a firearm for purposes of the aggravating element of robbery and the gun specifications.

{¶ 11} When the case resumed, Obsaint moved for an acquittal pursuant to Crim. R. 29, arguing that the note was not enough to establish that he had possessed a handgun. The trial court denied the motion, and the parties rested. In closing argument, Obsaint again argued that the note was insufficient. The trial court again disagreed and found

1. The factual findings of the state appellate court are entitled to a presumption of correctness in the absence of clear and convincing evidence to the contrary. 28 U.S.C. § 2254(e)(1); *see McAdoo v. Elo,* 365 F.3d 487, 493–94 (6th Cir.2004).

Obsaint guilty on all charges and specifications.

(Doc. 13, Exh. 10 at 2–3).

Petitioner was sentenced to a total of nine years imprisonment. (Doc. 13, Exh. 4). The two gun specifications and the robbery and aggravated robbery counts were merged. Petitioner received six years for aggravated robbery and three years on the gun specification. *Id.*

Petitioner, through counsel, unsuccessfully appealed his conviction to the First District Ohio Court of Appeals and the Supreme Court of Ohio. (Doc. 13, Exhs. 5–13).

Petitioner filed a *pro se* application for delayed reconsideration in the Ohio Court of Appeals which was overruled. (Doc. 13, Exhs. 14, 15). His subsequent appeal to the Ohio Supreme Court was dismissed as not involving any substantial constitutional question. (Doc. 13, Exhs. 16–18).

Thereafter, petitioner filed a pro se petition for post-conviction relief alleging his indictment was defective. He also filed motions to amend his petition and for summary judgment in the trial court. (Doc. 13, Exhs. 19–21). The trial court denied the petition as without merit and the motions as moot. (Doc. 13, Exh. 22).

## II. FEDERAL HABEAS CORPUS

Petitioner filed the instant petition for a writ of habeas corpus setting forth the following grounds for relief:

**GROUND ONE:** Petitioner's conviction is sustained through insufficient evidence, contrary to Federal and Ohio State law.

**Supporting Facts:** Petitioner was found guilty of a gun specification for his crime when there was no weapon of any sort was used in the offense. There was no direct nor circumstantial evidence in this case that established petitioner's alleged possession of an operable firearm or weapon during the incident in question.

**GROUND TWO:** Petitioner was denied due process when the appellate court disregarded the testimony of the bank teller that there was no weapon in the possession of the defendant at the time of the incident.

**Supporting Facts:** During trial, Tiffany Van Leuit testified that she never saw the petitioner in the possession of a gun nor did she witness any conduct on the part of the defendant to indicate possession of a gun or weapon. The appellate court failed to address the issue of her testimony, a lay witness.

(Doc. 1).

## III. STANDARD OF REVIEW

On federal habeas review, the factual findings of the state appellate court are entitled to a presumption of correctness in the absence of clear and convincing evidence to the contrary. 28 U.S.C. § 2254(e)(1). *See McAdoo v. Elo,* 365 F.3d 487, 493–94 (6th Cir.2004); *Mitzel v. Tate,* 267 F.3d 524, 530 (6th Cir.2001). This Court is bound by the state court adjudications unless those decisions are contrary to or an unreasonable application of clearly established federal law. *Franklin v. Francis,* 144 F.3d 429, 433 (6th Cir.1998).

Under the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104–132, 110 Stat. 1214 ("AEDPA"), a writ of habeas corpus may not issue with respect to any claim adjudicated on the merits in state court unless the adjudication either:

1. resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

2. resulted in a decision that was based on an unreasonable determination of the

facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The phrases "contrary to" and "unreasonable application" have independent meanings: A federal habeas court may issue the writ under the 'contrary to' clause if the state court applies a rule different from the law set forth in ... [Supreme Court] cases, or if it decides a case differently that we have done on a set of materially indistinguishable facts. The court may grant relief under the 'unreasonable application' clause if the state court correctly identifies the governing legal principle from ... [the Supreme Court's] decisions but unreasonably applies it to the facts of a particular case. The focus on the latter inquiry is whether the state court's application of clearly established federal law is objectively unreasonable ... and an unreasonable application is different from an incorrect one.

*Bell v. Cone,* 535 U.S. 685, 694, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002) (citation omitted).

However, if a state court does not articulate the reasoning behind its decision or fails to adjudicate the constitutional issues, the AEDPA deferential standard of review set forth in section 2254(d) is inapplicable. *See Wiggins v. Smith,* 539 U.S. 510, 534, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003); *Towns v. Smith,* 395 F.3d 251, 257 (6th Cir.2005); *see also Clinkscale v. Carter,* 375 F.3d 430, 436 (6th Cir.2004) (citing *Maples v. Stegall,* 340 F.3d 433, 436 (6th Cir.2003) ("Where as here, the state court did not assess the merits of a claim properly raised in a habeas petition, the deference due under AEDPA does not apply.")). Under these circumstances, the constitutional claim is reviewed *de novo* and the Court considers "the totality of the evidence—'both that adduced at trial, *and the evidence adduced in the habeas proceed-*

*ing[s].'*" *Wiggins,* 539 U.S. at 536, 123 S.Ct. 2527 (emphasis in the original) (quoting *Williams v. Taylor,* 529 U.S. 362, 397–98, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000)). *Accord Clinkscale,* 375 F.3d at 436.

## IV. GROUND ONE OF THE PETITION IS WITHOUT MERIT

Petitioner's first ground for relief asserts there was insufficient evidence to support the aggravated robbery conviction and gun specifications. Specifically, petitioner contends there was insufficient evidence to support a finding that he possessed an operable firearm at the time of the robbery.

The Due Process Clause of the Fourteenth Amendment protects a defendant in a criminal case from conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he or she is charged. *Jackson v. Virginia,* 443 U.S. 307, 316, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *In re Winship,* 397 U.S. 358, 364, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). In analyzing claims of insufficient evidence, the Court must determine whether "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson,* 443 U.S. at 319, 99 S.Ct. 2781 (emphasis in original). This standard reserves to the trier of fact the responsibility to resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from the basic facts to the ultimate facts. *Id.* at 318–319, 99 S.Ct. 2781.

On habeas corpus review, the federal court conducts an independent review of the state court record in analyzing petitioner's sufficiency of the evidence claim. *Nash v. Eberlin,* 437 F.3d 519, 525 (6th Cir.2006). However, the Court "does not reweigh the evidence or redetermine the

credibility of the witnesses whose demeanor has been observed by the trial court." *Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir.2003) (citing *Marshall v. Lonberger*, 459 U.S. 422, 434, 103 S.Ct. 843, 74 L.Ed.2d 646 (1983)). "*Jackson* makes clear that 'a federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.'" *O'Hara v. Brigano*, 499 F.3d 492, 499 (6th Cir.2007) (citing *Jackson*, 443 U.S. at 326, 99 S.Ct. 2781). In addition, circumstantial evidence may be sufficient to support a conviction and such evidence need not remove every reasonable hypothesis except that of guilt. *See Jackson*, 443 U.S. at 326, 99 S.Ct. 2781; *Walker v. Russell*, 57 F.3d 472, 475 (6th Cir.1995); *Jamison v. Collins*, 100 F.Supp.2d 647, 705 (S.D.Ohio 2000), *aff'd*, 291 F.3d 380 (6th Cir.2002). "The mere existence of sufficient evidence to convict therefore defeats a petitioner's claim." *Matthews*, 319 F.3d at 788.

In the instant case, petitioner asserts there was insufficient evidence showing he possessed an operable firearm for purposes of the gun specification and the aggravating element of the robbery offense. (Doc. 1, memo. at 2–7; Doc. 6, memo. at 2–7). Petitioner contends the evidence established he did not possess a firearm because no gun was brandished or seen during the robbery. The bank teller testified she did not see a gun, did not see petitioner reach for anything or go through his pockets, and did not hear him say anything verbally about shooting her or having a gun. (Doc. 6, memo. at 8, citing Doc. 13, Exh. 26 at 12–13). In addition, no gun was recovered after a search of petitioner's car and home. (*Id.* at 38–39).

The First District Court of Appeals overruled petitioner's insufficiency of evidence claim as follows:

{¶ 12} Obsaint argues, as he did before the trial court, that the note he wrote indicating that he had a gun was not enough to support his conviction for aggravated robbery and was not enough to support the gun specifications. Accordingly, he claims in three assignments of error that (1) his convictions were supported by insufficient evidence; (2) his Crim. R. 29 motion was improperly denied; and (3) his convictions were against the manifest weight of the evidence. We disagree.

{¶ 13} In a challenge to the sufficiency of the evidence, the question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found all the essential elements of the crime beyond a reasonable doubt.[1] The standard of review for the denial of a Crim. R. 29(A) motion to acquit is the same.[2] In a challenge to the weight of the evidence, we must review the entire record, weigh the evidence, consider the credibility of the witnesses, and determine whether the trier of fact clearly lost its way and created a manifest miscarriage of justice.[3]

---

FN1. *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus.

FN2. *State v. Bridgeman* (1978), 55 Ohio St.2d 261, 381 N.E.2d 184, syllabus.

FN3. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 1997–Ohio–52, 678 N.E.2d 541.

{¶ 14} The basis for Obsaint's argument is the decision of this court in *State v. Phillips*.[4] In that case, the defendant robbed a bank by placing his hand in a paper bag, informing the teller that he had a pistol, and telling her that he would shoot her. Based on those facts, this court held that "the lay testimony

concerning the threatened shootings was, without more, legally insufficient to warrant convictions on the gun specifications." [5]

FN4. (1990), 69 Ohio App.3d 379, 590 N.E.2d 1281.

FN5. *Id.* at 382–383, 590 N.E.2d 1281.

{¶ 15} Six years later, this court again addressed the issue. In *State v. Green*,[6] the defendant robbed a bank by placing his hand in a large paper envelope and telling the teller that "this is a stickup, and if you press any buttons I'll blow your brains out." Based on those facts, and without reference to the *Phillips* decision, we affirmed the conviction, holding that there was enough evidence for a jury to conclude that the defendant had a gun.[7]

FN6. (1996), 117 Ohio App.3d 644, 691 N.E.2d 316.

FN7. *Id.* at 652, 691 N.E.2d 316.

{¶ 16} In 2001, this court again returned to the issue in *State v. Jeffers*.[8] In that case, the defendant robbed a United Dairy Farmers convenience store by keeping his hand in his pocket and telling the clerk that he would "blow [her] head off" if she did not comply. Citing *Green*, we held that there was sufficient evidence to support the gun specifications.[9]

FN8. *State v. Jeffers* (2001), 143 Ohio App.3d 91, 757 N.E.2d 417.

FN9. *Id.* at 95, 757 N.E.2d 417.

{¶ 17} While these cases each involved a defendant whose claim to possess a gun was accompanied by an overt act, there was nothing in the acts themselves that made them necessary to our decisions. Further, the facts in this case demonstrate why requiring an overt act would be inappropriate. Obsaint's note specifically instructed the bank teller not to look at him. Since the record indicates that she did as the note demanded, she did not have the opportunity to see if Obsaint was doing anything to confirm that he was armed. Under such circumstances, the absence of an overt act goes more to the weight rather than to the sufficiency of the evidence.

{¶ 18} To establish the gun specifications in this case and the aggravating element of robbery, the state had to show that Obsaint had possessed a "firearm."[10] The Revised Code requires that the "firearm" be operable.[11] This court has repeatedly held that the state can make that showing by circumstantial evidence.[12] We reject Obsaint's invitation to require an independent, overt act to support his conviction.

FN10. See R.C. 2941.141, 2941.145, and 2911.01(A)(1).

FN11. See R.C. 2923.11(B) (defining a "firearm" as "a deadly weapon capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant").

FN12. See *Jeffers* at 95, 757 N.E.2d 417 and cases cited therein.

{¶ 19} We hold that Obsaint's own written admission that he had a gun, in a note that made repeated references to shooting the teller, was sufficient circumstantial evidence to show that he possessed an operable firearm at the time that he committed the robbery. To the extent that our previous decision in *Phillips* was not overruled by *Green* and *Jeffers*, it is overruled today.

{¶ 20} In essence, the trial of this case was about resolving conflicting evidence. In the note that Obsaint gave to the teller, he told her that he had a gun. In his statement to the police, he said he did not. As with any such case, it was left to the trier of fact to resolve this conflict.

{¶ 21} The Second Appellate District has recently reached the same conclusion. In *State v. Greathouse*,[13] the defendant pushed the victim into her car

and told her not to look at him. He told her that he had a gun and that he would kill her and dump her body if she did not comply. He then raped her. Concluding that the gun specification was supported by sufficient evidence, the court cited our decision in *Jeffers* and held that "even though S.F. never saw the gun, the circumstantial evidence, including representations made by Greathouse, was sufficient to prove the firearm specification." [14]

FN13. 2nd Dist. No. 21536, 2007–Ohio–2136.

FN14. *Id.* at ¶ 20.

{¶ 22} We recognize the danger of confusion about this issue. Holding as we do today that possession of an operable firearm can be established though circumstantial evidence is not the same as holding that possessing a firearm and claiming to possess a firearm are legally interchangeable. We refuse to accept the position of the state that "[a] defendant may be guilty of a gun specification even if they [sic] do not possess a gun. Simply making the victim believe that they [sic] have a gun through words or actions is enough." The state must still convince a factfinder that the defendant actually possessed a firearm and that it was operable.

{¶ 23} This case is the perfect example of that principle. Obsaint's trial counsel presented a reasonable argument that, since Obsaint had been truthful about every other aspect of the offense when he confessed to the deputies, he was also being truthful when he told them that he did not have a gun at the time. Had the factfinder believed this to be true, the most he could have been convicted of was robbery.

{¶ 24} On this point, we note Obsaint's argument with respect to the robbery charge that, under these facts, the most that he could be "convicted" of was theft. We disagree. Obsaint was found

guilty of aggravated robbery and robbery. However, the robbery count was merged into the aggravated robbery count for purposes of sentencing. In *State v. Henderson,* [15] the court defined a conviction as the combined occurrence of a finding of guilty and the imposition of a sentence. In this case, there was more than one finding of guilt, but there was only one conviction involving the imposition of a sentence within the meaning of *Henderson.* Therefore, Obsaint was not convicted of robbery and any error involved in finding him guilty on the second count was harmless as a matter of law.

FN15. (1979), 58 Ohio St.2d 171, 389 N.E.2d 494.

{¶ 25} However, we also reject the argument that he could not have been found guilty of robbery. Obsaint argues that the threat made against the teller was not for the "immediate use of force." This argument fails for two reasons. First, the record belies the argument. Obsaint's note indicated that he would use immediate, deadly force if she did not comply. Second, Obsaint was found guilty of robbery under R.C. 2911.02(A)(2), which requires only that the defendant "threaten to inflict physical harm on another." Robbery under R.C. 2911.02(A)(3) requires the defendant to "threaten the *immediate* use of force," but Obsaint was not charged with that offense.

{¶ 26} Since the note that Obsaint presented to the bank teller indicated at two separate points that he would shoot her if she did not comply with his demands, the state presented sufficient evidence to establish that he had an operable firearm at the time that he robbed the PNC bank. Therefore, the trial court properly overruled Obsaint's motion for an acquittal pursuant to Crim.

R. 29. Furthermore, his convictions were supported by sufficient evidence and were not against the weight of the evidence. Obsaint's first three assignments of error are overruled.

(Doc. 13, Exh. 10 at 3–8).

The issue here is whether petitioner's own written admission that he had a gun, set forth in a note that made repeated references to shooting the bank teller, was sufficient circumstantial evidence to show that he possessed an operable firearm at the time that he committed the robbery. Aggravated robbery requires the defendant "[h]ave a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it." Ohio Rev.Code § 2911.01(A)(1). A "deadly weapon" is defined as "any instrument, device, or thing capable of inflicting death, and designed or specially adapted for use as a weapon, or possessed, carried, or used as a weapon." Ohio Rev.Code §§ 2911.01(D)(1); 2923.11(A). The firearm specification requires "that the offender had a firearm on or about the offender's person or under the offender's control while committing the offense and displayed the firearm, brandished the firearm, indicated that the offender possessed the firearm, or used it to facilitate the offense." Ohio Rev.Code § 2941.145(A). A "firearm" is defined as "any deadly weapon capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant" and "includes an unloaded firearm, and any firearm that is inoperable but that can readily be rendered operable." Ohio Rev.Code § 2923.11(B)(1). The Revised Code provides that circumstantial evidence may be relied upon in determining whether a firearm is operable: "When determining whether a firearm is capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant, the trier of fact may rely upon circumstantial evidence, including, but not limited to, the representations and actions of the individual exercising control over the firearm." Ohio Rev.Code § 2923.11(B)(2). Thus, both the gun specification and aggravating element of the robbery offense required the State to prove beyond a reasonable doubt that petitioner possessed an operable firearm.

The Supreme Court of Ohio has held that circumstantial evidence may be used to prove a firearm enhancement specification. *State v. Thompkins*, 78 Ohio St.3d 380, 678 N.E.2d 541 (1997) (syllabus, ¶ 1). "In determining whether an individual was in possession of a firearm and whether the firearm was operable or capable of being readily rendered operable at the time of the offense, the trier of fact may consider all relevant facts and circumstances surrounding the crime, which include any implicit threat made by the individual in control of the firearm." *Id.* The Supreme Court noted that proof that a firearm was operable at the time of the offense "can be established beyond a reasonable doubt by the testimony of lay witnesses who were in a position to observe the instrument and the circumstances surrounding the crime." 78 Ohio St.3d at 383, 678 N.E.2d at 544 (quoting *State v. Murphy* (1990), 49 Ohio St.3d 206, 551 N.E.2d 932 (1990) (syllabus) (finding sufficient evidence of possession and operability where defendant entered store, announced he was robbing it, pointed and waved gun at clerk, and explicitly threatened to kill clerk if clerk did not hand over money)). In *Thompkins*, the Ohio Supreme Court held that the trier of fact could reasonably conclude that the defendant was in possession of an operable firearm where the defendant implicitly threatened to shoot a store clerk by pointing a gun at the clerk and telling her that he was committing a "holdup" and to be "quick, quick," even though the defendant

did not expressly threaten to shoot the clerk. 78 Ohio St.3d at 383, 678 N.E.2d at 544. The Court noted that even in the absence of an explicit threat to shoot, the clerk thought her life was in danger. *Id.* The Court concluded that "where an individual brandishes a gun and implicitly but not expressly threatens to discharge the firearm at the time of the offense, the threat can be sufficient to satisfy the state's burden of proving that the firearm was operable or capable of being readily rendered operable." *Id.* at 384, 678 N.E.2d at 545.

The instant case presents the question of whether an implicit threat to discharge a firearm, in the absence of any evidence the gun was actually viewed at the time of the offense, is sufficient to establish the State's burden of proof that the defendant possessed a firearm that was operable. Numerous Ohio Courts of Appeal have answered this question in the affirmative, finding that threats or statements by the defendant which indicate the gun is operable constitutes circumstantial evidence from which the trier of fact may conclude beyond a reasonable doubt that the defendant possessed an operable firearm. For example, in *State v. Literal,* No. 07CA3207, 2009 WL 119839, at *6–7 (Ohio App. 4th Dist. Jan. 12, 2009), the Ohio Court of Appeals upheld the defendant's aggravated robbery conviction despite the absence of any evidence of a visible gun. In *Literal,* the defendant entered a pharmacy and handed the pharmacist a note indicating this was a robbery and requesting pharmaceuticals. The note further stated that the defendant possessed a gun and instructed the pharmacist not to sound the alarm or contact the police for at least five minutes, as there was another individual in the front of the store who also had a gun and who would remain in the store for five minutes after the robbery. The pharmacist testified that the defendant stood at the counter with his hand near his waist where there appeared to be a bulge under his jacket, leading the pharmacist to believe he had a gun during commission of the robbery. There was also evidence that the pharmacist, in accordance with the defendant's instructions in the note, waited several minutes and surveyed the front of the store before alerting authorities of the robbery. The Court of Appeals determined that a reasonable jury could conclude beyond a reasonable doubt from the totality of the circumstances that the defendant possessed a deadly weapon. *Id.* at *7. *See also State v. Jeffers,* 143 Ohio App.3d 91, 757 N.E.2d 417 (Ohio App. 1st Dist.2001) (sufficient evidence existed to support firearm specification where robbery defendant kept hand in pocket and told convenience store that he would "blow [her] head off" if she did not comply); *State v. Greathouse,* No. 21536, 2007 WL 1297181, at *4 (Ohio App. 2nd Dist. May 4, 2007) (sufficient evidence supported firearm specification even though victim never saw a gun, where defendant told victim that he had a gun and that he would kill her and dump her body if she did not comply); *State v. Haskins,* No. E–01–016, 2003 WL 99572, at *7 (Ohio App. 6th Dist. Jan. 10, 2003) (sufficient evidence to support aggravated robbery conviction where defendant threatened "Are you going to give me the money or do I have to pull this pistol out of my pocket?" and attendant believed defendant in fact had a gun and responded by immediately by putting up her hands even though no weapon was actually seen or found); *State v. Green,* 117 Ohio App.3d 644, 651–652, 691 N.E.2d 316, 321 (Ohio App. 1st Dist.1996) (sufficient evidence of deadly weapon where defendant verbally threatened to "blow the heads off" victims while having large envelope wrapped around hand, and victims surrendered money based on belief defendant was armed). *Cf. State v. Leftwich,* No. 23383, 2009 WL 3068259, at *3 (Ohio App. 2nd Dist. Sept. 25, 2009) ("A victim's

belief that a defendant had a gun, together with the intent on the part of the defendant to create and use that belief for his own criminal purposes, is sufficient to prove a firearm specification."). As the Ohio Court of Appeals in *Green* reasoned, "one who indicates by word and conduct that he has a gun in his possession should not be entitled as a matter of law to the conclusion that such words and conduct have no meaning." *Green*, 117 Ohio App.3d at 651, 691 N.E.2d at 321.

In the instant case, there was sufficient evidence from which the trier of fact could conclude beyond a reasonable doubt that petitioner possessed an operable firearm. The note handed to the bank teller by petitioner made two specific threats to shoot the teller if she did not comply with petitioner's instructions. Petitioner also threatened the teller that she would "be sorry forever" if she failed to comply with his instructions, confirming the ability of the firearm to produce a fatal result. Even though the bank teller testified that she did not see petitioner with a gun, she testified she believed petitioner had a gun and that if she did not comply with his demands she would be shot. (Doc. 13, Exh. 26, Tr. 8). The teller acted in accordance with this belief by handing over the money and going to the employee restroom as instructed by petitioner in his note.

In contrast to the circumstantial evidence that petitioner possessed a gun that was operable, petitioner told the police he did not have a firearm when he robbed the bank. (Doc. 13, Exh. 26, Tr. 34). While no gun was ever found, this fact is not dispositive because petitioner had time to dispose of a weapon between his commission of the robbery and his arrest. As Detective Pitchford testified, one of the first items to be disposed of by a perpetrator of a crime is a gun. (Doc. 13, Exh. 26, Tr. 39–40). Although petitioner's denial of having a gun conflicted with his written admission that he possessed a gun during the robbery, the Court must presume that the trier of fact resolved the conflicting evidence in favor of the prosecution in weighing the evidence in this case. *O'Hara*, 499 F.3d at 499, 500. The Ohio Court of Appeals reasonably determined that petitioner's written admission to possessing a gun and his threats to shoot the teller was sufficient circumstantial evidence from which the trier of fact could conclude that petitioner possessed an operable firearm.

This Court likewise concludes that there is sufficient evidence from which the trier of fact could conclude beyond a reasonable doubt that petitioner possessed an operable firearm where he admitted, in writing, to possessing a gun at the time of the robbery and that the gun was operable where he repeatedly threatened to shoot the bank teller, and where the victim acted in accordance with her belief that petitioner in fact possessed an operable gun.[2]

---

2. *Brown v. Konteh*, 567 F.3d 191 (6th Cir. 2009), cited by petitioner in his reply brief (Doc. 19 at 4), is factually distinguishable from the instant case. The Sixth Circuit in *Brown* reversed the denial of habeas corpus relief on the defendant's firearm specification under Ohio Rev.Code § 2941.145(A) which requires "that the offender had a firearm on or about the offender's person or under the offender's control while committing the offense and displayed the firearm, brandished the firearm, indicated that the offender possessed the firearm, or used it to facilitate the offense." The *Brown* Court determined the state appellate court's determination was unreasonable as to one of the numerous victims because there was no evidence that a gun was actually used or displayed in the perpetration of the offenses against that particular victim. *Id.* at 214. In contrast, the evidence here showed petitioner "indicated possession" of a firearm by way of his admission in his threatening note to the bank teller.

When viewed in the light most favorable to the prosecution, the evidence was sufficient to establish the essential elements of aggravated robbery and the gun specification beyond a reasonable doubt.

There was sufficient evidence from which any rational trier of fact could find petitioner guilty of aggravated robbery and the gun specification beyond a reasonable doubt. When viewing all of the evidence in the light most favorable to the prosecution, *see Jackson v. Virginia, supra,* and for the reasons discussed by the state appellate court, this Court concludes that the evidence was constitutionally sufficient to sustain petitioner's conviction for aggravated robbery and the gun specification.

Therefore, the sufficiency of evidence claim alleged in Ground One of the petition is without merit and should be denied.

## V. GROUND TWO OF THE PETITION IS WITHOUT MERIT.

In Ground Two of the petition asserts that petitioner was denied due process when the Ohio Court of Appeals disregarded the testimony of the bank teller that she did not observe petitioner with a weapon during the bank robbery. Contrary to this contention, the Ohio Court of Appeals explicitly acknowledged the teller's testimony, but determined that the teller did not have the opportunity to observe petitioner with a gun because she complied with his threats not to look at him or be shot. In the context of the evidence presented, the state appellate court determined that the absence of any observation of an overt act on the part of petitioner by the teller went to the weight of the evidence and not the sufficiency of the evidence to convict. Thus, the teller's testimony that she did not have the opportunity to see whether or not petitioner was armed fails to confirm the absence of a firearm during the robbery as petitioner contends. The Ohio Court of Appeals' determination in this regard did not result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. Accordingly, Ground Two of the petition lacks merit and should be denied.

## IT IS THEREFORE RECOMMENDED THAT:

1. Petitioner's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. 1) should be DENIED with prejudice.

2. Petitioner's motion for summary judgment be DENIED.

3. A certificate of appealability should not issue with respect to the claims alleged in the petition because petitioner has failed to make a substantial showing of the denial of a constitutional right based on these claims. *See* 28 U.S.C. § 2253(c); Fed. R.App. P. 22(b).

4. The Court should certify pursuant to 28 U.S.C. § 1915(a)(3) that an appeal of any Order adopting this Report and Recommendation would not be taken in "good faith" and, therefore, DENY petitioner leave to proceed on appeal *in forma pauperis* upon a showing of financial necessity. *See* Fed. R.App. P. 24(a); *Kincade v. Sparkman,* 117 F.3d 949, 952 (6th Cir. 1997).

### NOTICE

Attached hereto is a Report and Recommendation issued by the Honorable Timothy S. Hogan, United States Magistrate Judge, in the above-entitled habeas corpus action. Pursuant to Fed.R.Civ.P. 72(b), which may be applied in this action under Rules 1 and 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, any

party may object to the Magistrate Judge's Report and Recommendation **within 15 days** after being served with a copy thereof. Such party shall file with the Clerk of Court and serve on all other parties written objections to the Report and Recommendation, specifically identifying the portion(s) of the proposed findings, recommendations, or report objected to, together with a memorandum of law setting forth the basis for such objection(s). Any response by an opposing party to the written objections shall be filed within 10 days after the opposing party has been served with the objections. *See* Fed. R.Civ.P. 72(b). A party's failure to make objections in accordance with the procedure outlined above may result in a forfeiture of his rights on appeal. *See Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir.1981).

---

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Evans A Ob'Saint
527-561
Toledo Corr. Inst.
PO Box 80033
Toledo, OH 43608

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X ☑ Agent ☐ Addressee

B. Received by (*Printed Name*) | C. Date of Delivery

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

3. Service Type
☑ Certified Mail ☐ Express Mail
☐ Registered ☐ Return Receipt for Merchandise
☐ Insured Mail ☐ C.O.D.

4. Restricted Delivery? (*Extra Fee*) ☐ Yes

2. Article Number
(Transfer from service label)
7002 3150 0000 8388 4599

PS Form 3811, August 2001    Domestic Return Receipt    102595-02-M-1540

1: 08cv640 Doc. 20