The State of Ohio, Appellee, *v.* Murphy, Appellant.

[Cite as State *v.* Murphy (1990), 49 Ohio St. 3d 206.]

(No. 88-734—Submitted December 12, 1989—Decided March 7, 1990.)

*Michael Miller,* prosecuting attorney, *Patrick E. Sheeran* and *Allan C. Travis,* for appellee.

*James Kura,* county public defender, and *Paul Skendelas,* for appellant.

*Randall M. Dana,* public defender, *Gregory L. Ayers* and *Barbara A. Farnbacher,* urging reversal for *amicus curiae,* the Ohio Public Defender Commission.

ALICE ROBIE RESNICK, J. The issue before this court is whether the firearm specification in R.C. 2929.71 can be proven beyond a reasonable doubt without actually presenting scientific or direct evidence as to the

operability of the firearm. This court recently held in *State* v. *Gaines* (1989), 46 Ohio St. 3d 65, 545 N.E. 2d 68, at the syllabus, that "R.C. 2923.11(B) and 2929.71(A) require that, prior to imposition of an additional term of three years' actual incarceration for possession of a firearm during the commission of a felony, the state must prove beyond a reasonable doubt that the firearm was operable or could readily have been rendered operable at the time of the offense." We reaffirm that holding but will modify it as to the type of evidence which is required to prove this specification beyond a reasonable doubt.

The focus of this opinion, therefore, will be to establish exactly what type of evidence is sufficient in determining whether the state has met its burden of proof. "Firearm" is defined in R.C. 2923.11(B) as "* * * any deadly weapon capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant. 'Firearm' includes an unloaded firearm, and any firearm which is inoperable but which can readily be rendered operable." R.C. 2929.71 provides, in pertinent part:

"(A) The court shall impose a term of actual incarceration of three years * * * if both of the following apply:

"(1) The offender is convicted of, or pleads guilty to, any felony other than a violation of section 2923.12 of the Revised Code;

"(2) The offender is also convicted of, or pleads guilty to, a specification charging him with having a firearm on or about his person or under his control while committing the felony. The three-year term of actual incarceration imposed pursuant to this section shall be served consecutively with, and prior to, the life sentence or the indefinite term of imprisonment."

In enacting this statute the legislature wanted to send a message to the criminal world: "If you use a firearm you will get an extra three years of incarceration." That is why it chose the word "firearm," instead of simply "deadly weapon," which can include all types of lethal instruments. The foregoing definition includes loaded as well as unloaded guns. It also includes operable guns, as well as inoperable guns that can readily be rendered operable. Hence, it is only reasonable that the state can rely upon all of the surrounding facts and circumstances in establishing whether a firearm was used in the commission of a felony.

In considering the facts of the case before us, we find that the appellant entered the United Dairy Farmers store and announced that it was a holdup. He then took out a T-shirt from inside the front of his pants. As he unwrapped the shirt, a small gun appeared. He pointed the gun at both the clerk and the customer, waving it back and forth while announcing that if the clerk did not give him the money he would kill him. In addition, both the clerk and the customer described the gun as a one- or two-shot silver or chrome derringer.

From the totality of the circumstances (*i.e.*, the gun being wrapped in a shirt, a description of the instrument from eyewitnesses, and the statement by appellant that he would kill the clerk if he did not give him the money), the evidence is sufficient to establish proof beyond a reasonable doubt that the appellant in this case possessed a "firearm" as defined in R.C. 2923.11(B). We hold that before a defendant can receive an enhanced penalty pursuant to R.C. 2929.71(A), the state must present evidence beyond a reasonable doubt that the firearm was operable, or could readily have been rendered operable, at the

time of the offense. However, such proof can be established beyond a reasonable doubt by the testimony of lay witnesses who were in a position to observe the instrument and the circumstances surrounding the crime. To rule otherwise would destroy the intent of the General Assembly to impose an additional term of three years' actual imprisonment on those persons who use a firearm to carry out their criminal objectives.

This holding is consistent with decisions from other jurisdictions whose legislatures have attempted to control the use of firearms. See *State v. Millett* (Me. 1978), 392 A. 2d 521, 527-528; *Benson v. State* (Wyo. 1982), 640 P. 2d 83, 86, certiorari denied (1982), 456 U.S. 1006; *People v. Brooks* (1984), 135 Mich. App. 193, 196-198, 353 N.W. 2d 118, 120-121; *People v. Taylor* (1984), 151 Cal. App. 3d 432, 436-437, 199 Cal. Rptr. 6, 9-10; *State v. Gantt* (1986), 101 N.J. 573, 503 A. 2d 849; *State v. Hillis* (Mo. App. 1988), 748 S.W. 2d 694.

We recognize that these cases are from other jurisdictions, and interpret statutes that differ from R.C. 2929.71. However, they do aid in our determination of the present case because they all share a related issue: the existence or non-existence of a firearm during the commission of a crime. Likewise, they necessarily interpret a legislative definition of "firearm." For example, in *Millett, supra,* the defendant was convicted of possession of a concealed firearm by a felon. In rejecting the defendant's argument that the evidence was insufficient to prove that he possessed a firearm under the applicable definition of a "firearm," the court stated as follows: "From the whole evidence the jury was warranted to find beyond a reasonable doubt that * * * Millett actually had in his possession a real gun. It is not essential to the

validity of such a finding that the firearm itself be admitted in evidence as an exhibit." *Id.* at 527. In *Millett,* the evidence concerning the firearm was supplied primarily from witnesses who testified they saw the handle and hammer of a handgun protruding from the defendant's belt. This was the evidence that the court found to support the existence of a firearm.

Similarly, in *Gantt, supra,* the New Jersey Supreme Court stated that "* * * we limited our grant of certification to the single issue of whether a firearm must be proven operable before * * * sentence may be imposed." *Id.* at 578, 503 A. 2d at 851. In deciding this issue, the New Jersey Supreme Court held that "[i]n addition, we note in particular that an object's authentic design may be inferred from appearance or based on lay testimony, but in no case is it dependent upon empirical examination of the weapon." *Id.* at 589-590, 503 A. 2d at 857. The *Gantt* court went on to hold that operability of the firearm need not be proven by the state. While we hold that operability must still be established, we agree with the holding that proof of the existence of a firearm may be based on lay testimony, and is not dependent on an empirical analysis of the gun. To require the state to produce the actual firearm or empirical evidence would frustrate the intent of the General Assembly.

For all of the above reasons, the court of appeals is affirmed and the case is remanded for further proceedings consistent with this opinion.

*Judgment affirmed
and cause remanded.*

HOLMES, DOUGLAS and WRIGHT, JJ., concur.

MOYER, C.J., and H. BROWN, J., concur in the syllabus and judgment.

SWEENEY, J., dissents.

MOYER, C.J., concurring. I concur in the syllabus and judgment but write separately to suggest that it is not necessary to modify *State* v. *Gaines* (1989), 46 Ohio St. 3d 65, 545 N.E. 2d 68, because the controlling facts in *Gaines* which produced the majority opinion are clearly distinguishable from the controlling facts in this case.

In *Gaines,* the testimony of three nonparty witnesses indicated they saw the defendant use a shiny silver or silver-plated gun. In this case, the victim of the robbery stated that the object held by the defendant when he committed the robbery "looked like a little silver derringer, a little one shot." A witness to the robbery stated: "To me it looked like a one- or two-shot derringer."

Furthermore, in *Gaines,* the defendant apparently uttered no words that could be related to the operability of the purported firearm. In this case, the victim testified that defendant told him to hand over all the money. When the victim hesitated, the defendant said, "I am not kidding, man, I will kill you. Give me all your money." A customer in the store at the time of the robbery saw defendant point a gun at the clerk and say, "I said this is a robbery, give me your money or I will blow you away."

The description of the gun used by this defendant is more specific than it was in *Gaines.* Even more importantly, the statements uttered by defendant while committing the robbery tend to prove what was not proven in *Gaines,* that the object held by the defendant was indeed capable of "expelling or propelling one or more projectiles" that could harm the victim. The statements by defendant constitute credible evidence relative to the gun's operability.

When a person, holding what appears to be a gun, makes statements from which it can be reasonably concluded that the gun is operable and therefore a firearm, such evidence is admissible to satisfy the requirements of R.C. 2923.11(B) and 2929.71(A). To the argument that a person holding a toy gun may also make such a threatening statement, I would answer that a person pointing a gun at someone to cause that person to perform an act and uttering words that indicate that the gun can cause harm is not entitled to a conclusion as a matter of law that his words mean nothing. The implication of such words is that the gun is operable and a finder of fact may reasonably conclude that such words tend to prove the gun is indeed operable.

For the foregoing reasons, I would distinguish this case from *Gaines* and affirm the judgment of the court of appeals.

H. BROWN, J., concurs in the foregoing concurring opinion.

SWEENEY, J., dissenting. In what may be fairly characterized as a rhetorical sleight-of-hand, the majority, while ostensibly "modifying" our previous holding in *State* v. *Gaines* (1989), 46 Ohio St. 3d 65, 545 N.E. 2d 68, has ignored its central premise and the plain language of R.C. 2929.71 and 2923.11(B).

Courts are empowered to apply statutes, particularly criminal enactments, as they are written and not as some would wish they had been written so as to achieve a desired result. The statutes at issue in the present case and in *State* v. *Gaines, supra,* are no exception. R.C. 2929.71 provides in relevant part:

"(A) The court shall impose a term of actual incarceration of three years in addition to imposing a life sentence pursuant to section 2907.02, 2907.12, or 2929.02 of the Revised Code or an indefinite term of imprisonment pursuant to section 2929.11 of the Revised Code, if both of the following apply:

"(1) The offender is convicted of, or pleads guilty to, any felony other than a violation of section 2923.12 of the Revised Code;

"(2) The offender is also convicted of, or pleads guilty to, a specification charging him with having a firearm on or about his person or under his control while committing the felony. The three-year term of actual incarceration imposed pursuant to this section shall be served consecutively with, or prior to, the life sentence or the indefinite term of imprisonment.

"* * *

"(D) As used in this section:

"(1) 'Firearm' has the same meaning as in section 2923.11 of the Revised Code[.]"

R.C. 2923.11(B) defines "firearm" as follows:

" 'Firearm' means any *deadly weapon capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant.* 'Firearm' includes an unloaded firearm, and any firearm which is inoperable but which can readily be rendered operable." (Emphasis added.)

It is axiomatic that the state is obligated to prove each and every element of an offense beyond a reasonable doubt. The firearm specification statute enacted by the Ohio General Assembly defines a "firearm" in terms of its operability. Thus, operability is an essential element of the offense.

Accordingly, R.C. 2929.71(A) requires that the state establish beyond a reasonable doubt that appellant was in possession of an operable firearm at the time of the underlying offense. Far from meeting its burden of proof, the state has failed to adduce any evidence directed toward the operability of the firearm. The "evidence" relied upon by the majority is no more probative regarding the capabilities of the deadly weapon possessed by appellant than the witnesses' descriptions of the gun used by Dennis Gaines. Indeed, the "facts and circumstances" deemed significant by the majority include the "descriptions from eyewitnesses" which this court correctly observed in *Gaines* to be of no utility in establishing whether a "firearm," *as defined by the legislature,* was present. The other facts and circumstances identified by the majority are of even less utility. The significance that the majority attaches to the fact that the gun was "wrapped in a shirt" is puzzling at best. It would appear that an accused would be more likely to employ the aforementioned tactic if he were seeking to obscure from view a toy gun than if he were actually concealing an operable firearm. Similarly, one attempting to impress upon a sales clerk the need to be cooperative during a robbery will certainly seek, through his verbal representations, to convince the clerk that he possesses an operable firearm irrespective of the actual properties of the device employed. Indeed, where a "firearm" *as defined by the legislature* is not employed, the need to bluff is essential.

Consequently, the factors cited by the majority are, if anything, more consistent with a theory of innocence regarding the firearm specification than with a theory of guilt. Where evidence is *equally* consistent with a theory of innocence as it is with a theory of guilt it may not be relied upon to support a conviction. See *State v. Gaines, supra,* at 69, 545 N.E. 2d at

72; *State* v. *Kulig* (1974), 37 Ohio St. 2d 157, 66 O.O. 2d 351, 309 N.E. 2d 897.

The reliance by the majority upon decisions of other jurisdictions is similarly unpersuasive. In *Benson* v. *State* (Wyo. 1982), 640 P. 2d 83, the weapon giving rise to the crime charged was admitted in evidence and thus formed a proper basis for a conviction under the statute in question. See *State* v. *Gaines, supra,* at 69, 545 N.E. 2d at 71. The conviction was not based upon the type of speculative "evidence" employed in the instant case. Moreover, as the majority readily concedes, the other decisions that it cites "interpret statutes that differ from R.C. 2929.71." This is an understatement. The statutes that formed the basis of the intermediate appellate decisions in *People* v. *Brooks* (1984), 135 Mich. App. 193, 353 N.W. 2d 118; *State* v. *Hillis* (Mo. App. 1988), 748 S.W. 2d 694; and *People* v. *Taylor* (1984), 151 Cal. App. 3d 432, 199 Cal. Rptr. 6, did not define firearms in terms of their operability. Consequently, they are of no value to this court

compared to the plain language employed by the General Assembly in R.C. 2929.71. R.C. 2929.71 clearly makes operability an essential element of the offense created thereby. Where there exists no competent evidence establishing this element, a jury may not convict on the basis of mere speculation. Under such circumstances, the state has failed to maintain its burden of proof.

Defining a firearm in terms of operability undoubtedly creates serious evidentiary problems for the state. Moreover, any deterrent value obtained by a firearm specification statute is certainly laudable. In this regard, I am in total agreement with the concerns expressed by the majority. However, any alteration of the statutory language must emanate from the General Assembly.[1] It is not the function of this court to amend the statute under the guise of judicial interpretation. The rule of law is not enhanced by the conscious disregard of statutory language defining a criminal act. I must therefore dissent.

---

[1] Indeed, the majority has provided an example of one legislative resolution of the issue. In *State* v. *Millett* (Me. 1978), 392 A. 2d 521, 524, the Supreme Judicial Court of Maine referred to the following definition of "firearm" contained in 17 Maine Revised Statutes Anno. Section 4001(2):

"Firearm. 'Firearm' shall include any pistol, revolver, rifle, shotgun, machinegun, automatic and semiautomatic rifle or other firearm as the term is commonly used, or any gun, device or instrument in the nature of a weapon from which may be fired or pro-

jected any solid projectile or slug, pellet, missile or bullet or any gas, vapor or other nocuous thing by means of a cartridge or shell or by the action of an explosive or the igniting of flammable or explosive substances; *or any other instrument that has the appearance of a firearm even though not capable of discharging a projectile.*" (Emphasis *sic* in *Millett.*)

There is nothing to prevent the Ohio General Assembly from adopting a similar approach.