[Cite as *State v. Woodson*, 2012-Ohio-172.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

---

### JOURNAL ENTRY AND OPINION
### No. 96538

---

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## LATAVIOUS WOODSON

DEFENDANT-APPELLANT

---

## JUDGMENT:
## AFFIRMED

---

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-539826

**BEFORE:** Kilbane, P.J., Stewart, J., and E. Gallagher, J.

**RELEASED AND JOURNALIZED:**   January 19, 2012

**ATTORNEY FOR APPELLANT**

Robert A. Gaffney
75 Public Square
Suite 714
Cleveland, Ohio 44113

**ATTORNEYS FOR APPELLEE**

William D. Mason
Cuyahoga County Prosecutor
Vincent I. Pacetti
Assistant County Prosecutor
The Justice Center - 8th Floor
1200 Ontario Street
Cleveland, Ohio 44113

MARY EILEEN KILBANE, P.J.:

{¶ 1} Defendant-appellant, Latavious Woodson (Woodson), appeals his convictions. Finding no merit to the appeal, we affirm.

{¶ 2} In August 2010, Woodson was charged in a six-count indictment, with each count carrying one- and three-year firearm specifications and a notice of prior conviction and repeat violent offender specifications. Counts 1 and 4 charged him with the kidnapping and aggravated robbery of Joseph Clark (Joseph). Counts 2 and 5 charged him with the kidnapping and aggravated robbery of Michael Clark (Michael). Counts 3 and 6 charged him with the kidnapping and aggravated robbery of Steven Collier (Collier).

{¶ 3} Prior to the trial, the State dismissed Counts 3 and 6. The trial court renumbered the remaining counts as follows: Count 1 remained the same, Count 2 remained the same, Count 4 was renumbered to Count 3, and Count 5 was renumbered to Count 4. In addition, the notice of prior conviction and repeat violent offender specifications were bifurcated and tried to the court.

{¶ 4} The following evidence was adduced at the jury trial.

{¶ 5} On June 30, 2010, Joseph and his son Michael were working at his appliance and furniture store on Miles Avenue in Cleveland, Ohio. Around 4:45 p.m., Joseph and Michael were setting up items for sale on the sidewalk

outside of the store. Shortly thereafter, Collier approached Joseph and they began discussing a game system that Collier sold to Joseph the day before. They walked inside the store, while Joseph carried the game system. Michael testified that he was still outside at this point. He noticed a man, whom he identified as Woodson, walk past him, only to reappear seconds later with a mask covering part of his face. Woodson pointed a black, metal gun at Michael and told him that "this isn't a joke" and to get inside the building. Woodson then pointed the gun at Joseph. Woodson was standing about seven feet away from Joseph.

{¶ 6} Joseph testified that Woodson was dressed in all black and wore a skull cap as a mask across his nose and face. Joseph further testified that the skull cap slipped off Woodson's nose and that Woodson was fumbling with it while pointing the gun at him. Joseph also identified Woodson as the assailant. Joseph recognized Woodson because he lives in the neighborhood and walks past his store almost everyday.

{¶ 7} Woodson told Joseph to put his hands up, "[t]his is a robbery." He continued to say, "I'm not joking * * * I'll kill you." Woodson then told Joseph and Michael to "get down." Joseph, Michael, and Collier complied and laid down on the ground. Woodson then walked over to Joseph and put the gun to Joseph's head, while he emptied Joseph's pockets. He said, "I'm not playing with you. I'll kill you." Joseph felt the gun pressed against his

head. Joseph testified that it felt like "cold steel." Joseph testified that he is familiar with guns because he has previously owned them. He believed Woodson was using a real gun and identified it as an automatic 9 millimeter. He felt that Woodson was serious about his threats and thought that he was going to die. Woodson took Joseph's wallet and cell phone.

{¶ 8} Woodson then walked over to Michael, who was lying on the ground, and took Michael's wallet and cell phone. Woodson walked over to Collier and swiped his hand across Collier's pocket. He then fled the scene.

{¶ 9} Joseph and Michael attempted to chase after Woodson, but could not locate him. A neighbor called the police, who arrived a few minutes later. The police were not able to find Woodson that day, but instructed Joseph to call them if he saw Woodson in the area again. Two weeks later, when Joseph was speaking to an officer outside his store, Joseph observed Woodson driving his car. Joseph then informed the police officer, who conducted a traffic stop and arrested Woodson. The officer returned to Joseph's store with Woodson sitting in the back of his police cruiser. Joseph then identified Woodson as the assailant.

{¶ 10} At the conclusion of trial, the jury found Woodson not guilty of Count 1 and guilty of Counts 2, 3, and 4 (kidnapping and aggravated robbery), including the one- and three-year firearm specifications. The trial court found Woodson guilty of the accompanying notice of prior conviction and

repeat violent offender specifications on Counts 2-4. The court merged Count 2 with Count 4 for purposes of sentencing. The court sentenced Woodson to seven years in prison on each of Counts 3 and 4, to be served concurrently. The court also merged the one- and three-year firearm specifications in Counts 3 and 4 and sentenced him to three years on the firearm specifications to run consecutive and prior to Counts 3 and 4 for an aggregate of ten years in prison.

{¶ 11} Woodson now appeals, raising the following two assignments of error for review.

ASSIGNMENT OF ERROR ONE

**"The State did not present sufficient evidence to show that the firearm allegedly possessed by [Woodson] was actually operable and therefore a deadly weapon. Accordingly, his convictions for aggravated robbery in [Counts 3 and 4] and for the firearms specifications in [Counts 1-4], are against the sufficiency of the evidence and should be reversed because they violate the Fifth, Sixth and Fourteenth Amendments to the United States Constitution, and Article I, Section 10 of the [Ohio State Constitution.]"**

ASSIGNMENT OF ERROR TWO

**"The verdict in this case was against the manifest weight of the evidence and should be reversed because it violates the Fifth, Sixth and Fourteenth Amendments to the United States Constitution, and Article I, Section 10 of the [Ohio State Constitution.]"**

{¶ 12} Within these assigned errors, Woodson argues the State failed to present sufficient evidence to demonstrate that the firearm possessed by Woodson was actually operable and considered a deadly weapon to sustain his convictions for aggravated robbery with the firearm specifications. For this same reason, he further argues that his convictions are against the manifest weight of the evidence.

{¶ 13} The Ohio Supreme Court in *State v. Diar*, 120 Ohio St.3d 460, 2008-Ohio-6266, 900 N.E.2d 565, ¶113, explained the standard for sufficiency of the evidence as follows:

> "Raising the question of whether the evidence is legally sufficient to support the jury verdict as a matter of law invokes a due process concern. *State v. Thompkins* (1997), 78 Ohio St.3d 380, 386, 678 N.E.2d 541. In reviewing such a challenge, '[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.' *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus, following *Jackson v. Virginia* (1979), 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560."

{¶ 14} With regard to a manifest weight challenge, the "reviewing court asks whose evidence is more persuasive — the state's or the defendant's? * * * 'When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a "thirteenth juror" and disagrees with the factfinder's resolution of the conflicting testimony.' [*Thompkins* at 387], citing *Tibbs v. Florida* (1982), 457 U.S. 31, 42, 102 S.Ct. 2211, 72 L.Ed.2d 652." *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶25.

{¶ 15} Moreover, an appellate court may not merely substitute its view for that of the jury, but must find that "'in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *Thompkins* at 387, quoting *State v. Martin* (1983), 20 Ohio App.3d 172, 485 N.E.2d 717. Accordingly, reversal on manifest weight grounds is reserved for "'the exceptional case in which the evidence weighs heavily against the conviction.'" Id., quoting *Martin*.

{¶ 16} In the instant case, Woodson was convicted of aggravated robbery under R.C. 2911.01(A)(1), which provides that: "[n]o person, in attempting or committing a theft offense, as defined in [R.C. 2913.01], or in fleeing immediately after the attempt or offense, shall * * * [h]ave a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it[.]"

{¶ 17} R.C. 2923.11 defines "deadly weapon" and "firearm" as follows:

**"(A) 'Deadly weapon' means any instrument, device, or thing capable of inflicting death, and designed or specially adapted for use as a weapon, or possessed, carried, or used as a weapon.**

**(B)(1) 'Firearm' means any deadly weapon capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant. 'Firearm' includes an unloaded firearm, and any firearm that is inoperable but that can readily be rendered operable.**

**(2) When determining whether a firearm is capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant, the trier of fact may rely upon circumstantial evidence, including, but not limited to, the representations and actions of the individual exercising control over the firearm."**

{¶ 18} With respect to the firearm specifications, R.C. 2941.145 provides in pertinent part: "(A) [i]mposition of a three-year mandatory prison term upon an offender * * * is precluded unless the indictment, count in the indictment, or information charging the offense specifies that the offender had a firearm on or about the offender's person or under the offender's control while committing the offense and displayed the firearm, brandished the firearm, indicated that the offender possessed the firearm, or used it to facilitate the offense."

{¶ 19} Woodson asserts that the State did not prove that an operable firearm was used during the commission of the robbery. In support of his argument, he relies on the fact that the firearm was never recovered, and therefore it could not be examined for its operability, and that there was no testimony regarding the smell of gun powder or of shots being fired.

{¶ 20} The Ohio Supreme Court in addressing whether the firearm specification in R.C. 2929.71 can be proven beyond a reasonable doubt without actually presenting scientific or direct evidence as to the operability of the firearm, held that "[t]he state must present evidence beyond a

reasonable doubt that a firearm was operable at the time of the offense before a defendant can receive an enhanced penalty pursuant to R.C. 2929.71(A). However, such proof can be established beyond a reasonable doubt by the testimony of lay witnesses who were in a position to observe the instrument and the circumstances surrounding the crime. (*State v. Gaines* [1989], 46 Ohio St.3d 65, 545 N.E.2d 68, modified.)"

{¶ 21} *State v. Murphy* (1990), 49 Ohio St.3d 206, 551 N.E.2d 932, at the syllabus.

{¶ 22} The Ohio Supreme Court later refined the matter by which the State may prove a firearm specification in *Thompkins*, where the court found that "[i]n determining whether an individual was in possession of a firearm and whether the firearm was operable or capable of being readily rendered operable at the time of the offense, the trier of fact may consider all relevant facts and circumstances surrounding the crime, which include any implicit threat made by the individual in control of the firearm." Id. at paragraph one of the syllabus.

{¶ 23} Moreover, with respect to operability, in *State v. Fulton*, Cuyahoga App. No. 96156, 2011-Ohio-4259, we recently explained:

> **"'This Court "evaluate[s] the evidence of a firearm's operability by examining the totality of the circumstances." *State v. McElrath* (1996), 114 Ohio App.3d 516, 519, 683 N.E.2d 430, citing [*Murphy* at 208]. In *McElrath*, this Court found that in cases where no shots**

**are fired and the firearm is not recovered, circumstantial evidence, such as the representations and actions of the gun operator, are of crucial importance. Id. Specifically, this Court found that "'the implicit threat of brandishing a firearm' supports an inference that the firearm was operable." *State v. Williams* (Dec. 27, 2000), 9th Dist. No. 19559, citing *McElrath*[, 114 Ohio App.3d] at 519-520."' Id. at¶34, quoting *State v. Ware*, Summit App. No. 22919, 2006-Ohio-2693.**

See, also, *State v. Gooden*, Cuyahoga App. No. 82621, 2004-Ohio-2699, ¶33, (where this court upheld defendant's aggravated robbery with firearm specification convictions, finding that the "operability of the weapon may be inferred from the facts and circumstances. [In *Gooden*, the] victim testified [the defendant] placed the gun into his side and instructed him to go to the back of the building. When the victim's friends appeared, [the defendant] displayed the gun and told them to leave. [The defendant] also pulled out the gun and instructed the victim to remove his clothing and proceeded to take money therefrom.")

{¶ 24} Based on the totality of the circumstances in the instant case, we find that the firearm was operable. The victims clearly testified to Woodson's use of a gun. Michael testified that Woodson pointed a black, metal gun at him and told him that "this isn't a joke." Woodson also pointed the gun at Joseph and told him to put his hands up, "[t]his is a robbery." Woodson continued to say, "I'm not joking * * * I'll kill you." Woodson then told Joseph and Michael to "get down." Woodson put his gun to Joseph's

head, while he emptied Joseph's pockets. He told Joseph that, "I'm not playing with you. I'll kill you." Joseph felt the gun pressed against his head. He testified that it felt like "cold steel." He further testified that he is familiar with guns because he has previously owned them. He believed Woodson was using a real gun and identified it as an automatic 9 millimeter. He felt that Woodson's threats were serious and he thought that he was going to die. Woodson then took Joseph's wallet and cell phone and Michael's wallet and cell phone. Thus, it was reasonable for the trier of fact to conclude that Woodson's words and actions were meant to imply that his gun was, in fact, operable. See *Gooden* at ¶33.

{¶ 25} Given the evidence, we conclude that any rational trier of fact could have found that Woodson possessed a firearm and that the operability of the firearm was proven beyond a reasonable doubt. We further find that this is not the extraordinary case where the "jury lost its way" and created a manifest miscarriage of justice.

{¶ 26} Accordingly, the first and second assignments of error are overruled.

Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

MARY EILEEN KILBANE, PRESIDING JUDGE

MELODY J. STEWART, J., and
EILEEN A. GALLAGHER, J., CONCUR