[Cite as *State v. Taylor*, 2015-Ohio-4556.]

COURT OF APPEALS
RICHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| STATE OF OHIO | JUDGES:<br>Hon. W. Scott Gwin, P. J. |
|     Plaintiff-Appellee | Hon. William B. Hoffman, J.<br>Hon. John W. Wise, J. |
| -vs- | |
| | Case No. 14 CA 92 |
| ANTONIO TAYLOR | |
|     Defendant-Appellant | O P I N I O N |

CHARACTER OF PROCEEDING:    Criminal Appeal from the Court of Common Pleas, Case No. 14 CR 277

JUDGMENT:    Affirmed

DATE OF JUDGMENT ENTRY:    October 30, 2015

APPEARANCES:

For Plaintiff-Appellee

BAMBI COUCH PAGE
PROSECUTING ATTORNEY
38 South Park Street
Mansfield, Ohio 44902

For Defendant-Appellant

DALE M. MUSILLI
105 Sturges Avenue
Mansfield, Ohio 44902

*Wise, J.*

{¶1}.   Appellant Antonio Marquies Taylor appeals his convictions, in the Court of Common Pleas, Richland County, on counts of aggravated robbery and aggravated burglary, with firearm specifications. Appellee is the State of Ohio. The relevant facts leading to this appeal are as follows.

{¶2}.   On December 23, 2013, Michelle Isaac and Jared Kelly ("Michelle" and "Jared") were living in an apartment at 55 ½ Arch Street in Mansfield, Ohio. They had just moved in about six days earlier. At this complex, Appellant Taylor and his brother sometimes performed repairs or maintenance to various apartment units. In fact, Michelle had previously been told by the landlord to see appellant or his brother when she was ready to have her gas turned on.

{¶3}.   Michelle was apparently close with an uncle who lived in a house near the Arch Street apartments. On the day in question, Michelle was alone for a time in the apartment doing some cleaning, while Jared was visiting nearby at Michelle's uncle's house. Jared had recently given Michelle about $375.00 in cash he had earned doing roofing work. At some point, Michelle heard a knock at the back door of the apartment. When she answered, she observed three men standing at the door asking for Jared. She recalled that all three of the men had tattoos. Although she was later able to physically describe the men, she only recognized one of them, i.e., Appellant Taylor.

{¶4}.   The men departed, and Michelle left the apartment to pick up Jared at the uncle's residence. Michelle thereupon saw Jared and appellant together, walking toward the apartment. Jared later testified that he had run into appellant as he was returning from Michelle's uncle's house. Appellant's brother was also waiting in the vicinity.

Appellant requested to go inside the apartment and speak with Jared, who assumed it had something to do with a maintenance issue.

{¶5}.  As the men headed to the apartment, they met Michelle coming out to get Jared. All of them returned to the apartment; however, as they entered, Michelle and Jared both heard appellant say "it's a robbery." Tr. at 156, 196. They were then robbed at gunpoint in the bedroom of the apartment.[1] The perpetrators got away with the aforesaid cash and a cell phone, and threatened to kill them and their family members if anybody went to the police.

{¶6}.  After the incident, Michelle and Jared fled the apartment. They first sought refuge in Michelle's uncle's house. They then relocated, moving numerous times before the matter went to trial, fearful of being found by the robbers. Michelle at some point went back once to the apartment with some friends to retrieve some personal property, only to find that many of the couple's belongings had disappeared after they left on December 23, 2013.

{¶7}.  In the meantime, on December 27, 2013, Michelle, despite her fears, went alone to the Mansfield Police Department. She only wanted to talk to Officer David Johnson, who had recently handled a friend's problem. Michelle subsequently contacted Jared to come to the police station as well.

{¶8}.  When interviewed by the police, Michelle recalled that three black males were involved in the robbery, while Jared only remembered two perpetrators. However,

---

[1]   The State does not herein assert that appellant himself used a firearm; rather, appellant and an unidentified black male with a handgun worked as a criminal team. *See* Appellee's Brief at 11.

each identified appellant as one of the persons who robbed them on December 23, 2013, noting that he had distinct teardrop tattoos under one of his eyes.

{¶9}. To confirm the identification, Officer Johnson requested that Lieutenant Doug Noblet put together a photo array. Upon the administering of the photo line-up to Michelle and Jared separately, each picked appellant out.

{¶10}. On May 9, 2014, appellant was indicted by the Richland County Grand Jury on seven felony charges, as follows: One count of aggravated robbery (R.C. 2911.01(A)(1), two counts of robbery (R.C. 2911.02(A)(1) and (A)(2)), two counts of aggravated burglary (R.C. 2911.11(A)(1) and (A)(2)), and two counts of burglary (R.C. 2911.12(A)(1) and (A)(2)). Each count included aiding/abetting language and a firearm specification pursuant to R.C. 2941.145.

{¶11}. During the pendency of the matter, Michelle and Jared Kelly did not keep the State apprised of their changes in address. Finally, material witness warrants were issued for each of them on September 25, 2014. These warrants were served, and bonds were posted on October 17, 2014.

{¶12}. The matter proceeded to a jury trial on November 6, 2014. At the conclusion of the presentation of evidence, the State dismissed Count VII, a count of burglary, along with its firearm specification.

{¶13}. On November 7, 2014, the jury returned a verdict of guilty on the remaining six counts.

{¶14}. Via judgment entry dated November 10, 2014, the trial court sentenced appellant to nine years in prison on Count I, aggravated robbery. The Trial Court found that Counts II and III, both robbery, were allied offenses to Count I. Appellant was also

sentenced to nine years on Count IV, aggravated burglary. Counts I and IV were ordered to be served concurrently. The court found that Count V, aggravated burglary, and Count VI, burglary, were allied offenses to Count IV. In addition, the trial court sentenced appellant to a mandatory and consecutive three-year term in regard to the firearm specifications. Because appellant was on post-release control (PRC) at the time of the offense, the trial court converted the remaining year of PRC time to an additional one-year sentence. Furthermore, the trial court ordered restitution of $450.00 to be paid to Michelle Isaac.

{¶15}. On November 26, 2014, appellant filed a notice of appeal. He herein raises the following two Assignments of Error:

{¶16}. "I. THERE WAS INSUFFICIENT EVIDENCE UPON WHICH TO CONVICT APPELLANT FOR AGGRAVATED BURGLARY, BURGLARY, AGGRAVATED ROBBERY OR ROBBERY AND THE FIREARMS [SIC] SPECIFICATIONS.

{¶17}. "II. THE EVIDENCE PRESENTED WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE [SIC]."

I.

{¶18}. In his First Assignment of Error, appellant contends his convictions were not supported by sufficient evidence. We disagree.

{¶19}. In reviewing a claim of insufficient evidence, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond

a reasonable doubt." *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus.

**{¶20}.** Appellant's present focus for purposes of sufficiency of the evidence goes to the issue of the firearm specifications attendant to his charges.[2] In Ohio, a gun specification and whether the offender was armed with a gun in the commission of an offense are distinct considerations. *State v. Nowlin*, 115 Ohio App.3d 778, 782, 686 N.E.2d 334 (4th Dist.1996). Where, as in the present case, the State does seek to enhance an offender's sentence via a gun specification, "the specification must appear in the indictment and be proven beyond a reasonable doubt." *Id.*, citing R.C. 2941.141 and R.C. 2929.71.

**{¶21}.** R.C. 2941.145(A) states in pertinent part: "Imposition of a three-year mandatory prison term upon an offender under division (B)(1)(a) of section 2929.14 of the Revised Code is precluded unless the indictment, count in the indictment, or information charging the offense specifies that the offender had a firearm on or about the offender's person or under the offender's control while committing the offense and displayed the firearm, brandished the firearm, indicated that the offender possessed the firearm, or used it to facilitate the offense. The specification shall be stated at the end of the body of the indictment, count, or information ***."

**{¶22}.** R.C. 2923.11(B)(1) states as follows: " 'Firearm' means any deadly weapon capable of expelling or propelling one or more projectiles by the action of an

---

2    The remainder of appellant's arguments in this assigned error essentially challenge the versions of events as recalled by Michelle and Jared, which we find to be in the nature of a manifest weight argument, which we will separately analyze herein. *See, e.g., State v. Williams*, 4th Dist. Scioto No. 00CA2731, 2001–Ohio–2579, citing *State v. Ricker,* 10th Dist. Franklin No. 97APC01–96, 1997 WL 606861.

explosive or combustible propellant. 'Firearm' includes an unloaded firearm, and any firearm that is inoperable but that can readily be rendered operable."

{¶23}. In addition, pursuant to R.C. 2923.11(B)(2), "[w]hen determining whether a firearm is capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant, the trier of fact may rely upon circumstantial evidence, including, but not limited to, the representations and actions of the individual exercising control over the firearm."

{¶24}. A firearm enhancement specification can be proven beyond a reasonable doubt by circumstantial evidence. In determining whether an individual was in possession of a firearm and whether the firearm was operable or capable of being readily rendered operable at the time of the offense, the trier of fact may consider all relevant facts and circumstances surrounding the crime, which include any implicit threat made by the individual in control of the firearm. *State v. Thompkins,* 78 Ohio St.3d 380, 678 N.E.2d 541, 1997-Ohio-52, paragraph one of the syllabus. *See*, *also*, *State v. Murphy* (1990), 49 Ohio St.3d 206, 551 N.E. 932.

{¶25}. In the case *sub judice*, appellant persuaded Jared to accompany him to the apartment by telling him he needed to have a discussion inside. Tr. at 156. It is undisputed that no gun was recovered by police or introduced at trial. However, Jared and Michelle each provided a description of the gun used during the ensuing robbery. Jared described it as "look[ing] like a forty or forty-five," light gray on the top portion and a darker matte gray on the bottom. Tr. at 163. He added that "[i]t looked fairly new." *Id.* Michelle emphasized it was not a hunting gun, but that it looked heavy based on the motions of the gunman's arm. Tr. at 198-199. On the witness stand, she held up her

fingers to demonstrate its size to the jury. Tr. at 199. She observed it as being "shiny like." *Id.* Each described how the individual holding the gun pointed the gun at them individually. Tr. at 157, 199. Michelle, for example, remembered that the gunman held the firearm "sideways" and pointed it back and forth between Jared's head and her face within the confines of the small room. Tr. at 199. Both also recalled that the gunman used the firearm to smack the change from Jared's hand when he offered it to the robbers. Tr. at 157, 203-204.

**{¶26}.** As noted by the Ohio Supreme Court in *Thompkins, supra*, "it should be abundantly clear that where an individual brandishes a gun and implicitly but not expressly threatens to discharge the firearm at the time of the offense, the threat can be sufficient to satisfy the state's burden of proving that the firearm was operable or capable of being readily rendered operable." *Id.* at 384. Upon review of the record and transcript in a light most favorable to the prosecution, we find that a reasonable finder of fact could establish beyond a reasonable doubt, via the circumstantial evidence presented, the operability of the firearm for purposes of the attendant specifications.

**{¶27}.** Appellant's First Assignment of Error is therefore overruled.

II.

**{¶28}.** In his Second Assignment of Error, appellant contends his convictions were against the manifest weight of the evidence. We disagree.

**{¶29}.** Our standard of review on a manifest weight challenge to a criminal conviction is stated as follows: "The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way

and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 485 N.E.2d 717. *See also, State v. Thompkins* (1997), 78 Ohio St.3d 380, 678 N.E.2d 541. The granting of a new trial "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *Martin* at 175, 485 N.E.2d 717.

{¶30}. The trial in the case sub judice consisted solely of the testimony of Michelle, Jared, Officer Johnson, and Lt. Noblet, as well as several photographic exhibits. No defense witnesses were called. As we noted previously, no weapon was recovered. Because the victims hid for several days before seeking law enforcement assistance, no immediate investigation of the crime scene was possible.

{¶31}. However, while the case relied heavily on trial testimony, our review indicates that during the police interviews and while on the stand, Michelle and Jared were generally consistent in their individual versions of the events. They both testified, for example, that Michelle had tucked her money in her shirt (which she pulled out upon demand from the robbers), and both identified appellant as the person who took the money and a cell phone from her. Tr. at 157, 201. Both were somewhat familiar with appellant based on his role as a maintenance man around the complex, although Michelle conceded that appellant looked like his brother. Tr. at 153, 156, 191, 192. Both were aided in making their identifications by the teardrop tattoos on appellant's face. Tr. 166-172, 191-194.

{¶32}. Both recalled being threatened not to contact the police. Tr. at 160, 204.

{¶33}. The chief variance in the testimony was that Michelle said there were three perpetrators, whereas Jared stated there were two, according to his observations.

*See* Tr. at 157, 170, 190, 197. Michelle testified specifically that a third male was blocking the doorway. Tr. at 200. She proposed that Jared might not have seen him because of the location of one of the doors. *See* Tr. at 215. Although there was no expert testimony presented on the issue, it is possible that both witnesses were experiencing a form of tunnel vision concerning the details of another perpetrator, brought on by the stress of the armed robbery. Michelle indeed noted on cross-examination that she did not remember if this third man stayed at the scene or not, as she was focused on the gun. *See* Tr. at 214.

**{¶34}.** Upon consideration of the trial record, we hold that the jury's decision did not create a manifest miscarriage of justice requiring appellant's convictions to be reversed and a new trial ordered.

**{¶35}.** Appellant's Second Assignment of Error is overruled.

**{¶36}.** For the reasons stated in the foregoing opinion, the judgment of the Court of Common Pleas, Richland County, Ohio, is hereby affirmed.

By: Wise, J.

Gwin, P. J., and

Hoffman, J., concur.

JWW/d 1006