[Cite as *State v. Ercoli*, 2017-Ohio-5571.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 104578**

# STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

# DAVID D. ERCOLI

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-16-602684-A

**BEFORE:** Jones, J., Kilbane, P.J., and Boyle, J.

**RELEASED AND JOURNALIZED:** June 29, 2017

**ATTORNEY FOR APPELLANT**

Kelly Zacharias
5546 Pearl Road
Parma, Ohio 44129


**ATTORNEYS FOR APPELLEE**

Michael C. O'Malley
Cuyahoga County Prosecutor

BY: Gregory Paul
Assistant County Prosecutor
The Justice Center, 9th Floor
1200 Ontario Street
Cleveland, Ohio 44113

LARRY A. JONES, SR., J.:

{¶1} Defendant-appellant, David Ercoli, appeals his conviction on multiple counts relating to two robberies. We affirm.

{¶2} In 2016, Ercoli was charged in a ten-count indictment with two counts of aggravated robbery with one- and three-year firearm specifications, two counts of kidnapping with one- and three-year firearm specifications, two counts of carrying a concealed weapon, two counts of improperly handling firearms in a motor vehicle, and one count each of theft and receiving stolen property with one- and three-year firearm specifications. Prior to trial, the state dismissed the two counts of kidnapping. The matter proceeded to a jury trial on the remaining counts.

{¶3} Mikki Jeffreys worked as a crew member at McDonald's on Memphis Avenue in Cleveland. Jeffreys was working the 10 p.m. – 6 a.m. shift on December 13, 2015, when a car pulled up to the drive-thru where Jeffreys was working and the driver placed an order. He pulled around to her window, got out of the car, and said that his car window did not roll down. Jeffreys explained that this alone was not unusual because customers often came through the drive thru with car windows that did not did not roll down. But the driver had a piece of paper in his hand, which he handed to Jeffreys. The note read for her give him all the "5s and 10s and 20s out of the drawer." The man was also holding a gun, which he pointed at her. Jeffreys complied with his demands.

{¶4} Jeffreys testified that the area was well lit and she got a good look at the man.

She described the gun he was holding as a black automatic handgun and testified that she knew about firearms because her boyfriend worked armed security and carried a similar handgun.

{¶5} Jeffreys's manager called the police, who responded to the scene. Jeffreys gave the police a description of the suspect and later was able to select a suspect, identified as Ercoli, out of a photo array. She testified she was "97% sure" that the man she picked out of the photo array was the same man who robbed the McDonald's.

{¶6} Jeffreys also identified Ercoli in court and testified she was 100% confident he was the man who robbed the McDonald's on December 13, 2015. The restart manager identified Ercoli from the surveillance footage of the robbery and again in court. The manager recognized Ercoli as a previous customer who had been to the McDonald's many times.

{¶7} Three days later, on December 16, 2015, Angelo Stames, the owner of a McDonald's on Clark Avenue in Cleveland, received a phone call that his restaurant had been robbed. He drove to the store and looked at the surveillance video from the robbery. He observed a man in the drive-thru lane exit a silver car, holding a gun. The man approached the drive-thru window and stuck his gun through the window pointing it at the crew member working inside.

{¶8} Regina Robinson was working second shift at the Clark Avenue McDonald's. She testified that it was around 7:30 p.m. when a man came through the drive-thru, got out of his car, and approached the window. Robinson saw the man stick a black gun

through the window; he had a gun in his right hand and a note in his left hand. Robinson immediately ran away from the window. She did not see the man's face and could not identify him.

{¶9} Michael Pisano, the owner of Diversified Automotive, also testified. His used car lot has between 75 and 90 cars on its lot at any given time. Pisano employs Discount Autobody, owned by Mike McKay, to fix up the cars for sale. Pisano testified that none of his employees are allowed to drive the cars on the lot except for business-related purposes and this restriction extends to Diversified.

{¶10} According to Pisano, he was watching the local news one evening in mid-December 2015 when he saw a story about a robbery at McDonald's. The news report showed surveillance video of the car the suspect was driving. Pisano recognized the car as one on his lot, a 2007 silver Hyundai Sonata, because it had a rear headrest that was stuck in the highest position. The next day, Pisano checked his lot and found the Sonata missing. But according to McKay's paperwork, the silver Hyundai Sonata was transferred from Diversified Automotive to Discount Autobody in mid-November 2015 and was returned to Diversified Automotive on November 25, 2015.

{¶11} On December 19, 2015, McKay saw the Hyundai Sonata in the parking lot of a shopping center near his bodyshop. It stuck out, he testified, because it had his special dealer plate on the back of the car that allows his company to transport the cars during the day time.

{¶12} McKay removed the plate and mentioned the story to Ercoli, who worked at

Discount Autobody as a detailer. Ercoli had worked there for over a year and McKay considered him a good employee. At the time, McKay did not suspect Ercoli of any wrongdoing. About an hour later, McKay drove by the shopping center again and noticed that the Sonata had been moved across the street to a drugstore parking lot. He also shared this news with Ercoli. At this point, McKay became suspicious so he reviewed the shop's surveillance video and saw that Ercoli left the shop shortly after McKay first told him about the Sonata in the shopping center parking lot.

{¶13} Later that evening, McKay drove by Ercoli's house and found the Sonata parked one street over from Ercoli's house. The next morning McKay waited "undercover" by the Sonata, saw Ercoli get in the car, drive to a gas station, park the car, and walk to work.

{¶14} Later that same day, McKay's son, who also worked in the shop, located the Sonata in a nearby neighborhood with a new dealer plate on it. McKay ran the VIN number and confirmed his suspicions that the car belonged to Diversified Automotive. McKay called a tow truck and had the car towed back to his bodyshop. McKay then called Pisano who went to claim his car. Pisano noted that there were someone else's personal items in the car, as though "[i]t looked like somebody had been using it for their personal use for some time."

{¶15} McKay confirmed that the Sonata had been returned to Diversified from his body shop; thus, he surmised, the car had been stolen off of Diversified's lot. At this point, McKay confronted Ercoli about stealing a license plate from his shop to put on the

stolen car and terminated him.

{¶16} Detective Elliott Landrau investigated the McDonald's robberies. He viewed the surveillance video from the December 13 robbery and noticed that the car involved in the robbery had a "special plate or a dealer plate" on it.

{¶17} After Ercoli's arrest, Detective Landrau interviewed him. The interview was recorded and played for the jury. Ercoli told detective that he had used the 2007 Sonata but that he had his boss's permission to use the car.

{¶18} At the close of the state's case in chief and pursuant to Crim.R. 29, the trial court dismissed the two counts of carrying a concealed weapon. The state dismissed the one- and three-year firearm specifications on the receiving stolen property count. After deliberations, the jury convicted Ercoli of all remaining charges and specifications and the trial court sentenced him to a total of 14 years in prison.

{¶19} Ercoli raises two assignments of error in which he argues that his convictions were not supported by sufficient evidence and were against the manifest weight of the evidence.

{¶20} In the first assignment of error, Ercoli contends that the evidence was insufficient to support his convictions for improperly handling weapons in a motor vehicle and for the firearm specifications attendant to the aggravated robbery charges.

{¶21} Sufficiency is a test of adequacy. Whether the evidence is legally sufficient to sustain a verdict is a question of law. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). When reviewing the sufficiency of the evidence to

support a criminal conviction, an appellate court examines the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶22} R.C. 2923.16(B), which prohibits improperly handling firearms in a motor vehicle, states: "No person shall knowingly transport or have a loaded firearm in a motor vehicle in such a manner that the firearm is accessible to the operator or any passenger without leaving the vehicle." R.C. 2941.145 permits the imposition of a mandatory three-year-prison term where the indictment specifies, and the jury finds

> that the offender had a firearm on or about the offender's person or under the offender's control while committing the offense and displayed the firearm, brandished the firearm, indicated that the offender possessed the firearm, or used it to facilitate the offenses.

{¶23} R.C. 2923.11(B)(1) defines a firearm as "any deadly weapon capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant. 'Firearm' includes an unloaded firearm, and any firearm that is inoperable but that can readily be rendered operable." The statute further provides that

> [w]hen determining whether a firearm is capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant, the trier of fact may rely upon circumstantial evidence, including, but not limited to, the representations and actions of the individual exercising control over the firearm.

*Id.*

**{¶24}** We find that there was sufficient evidence of the firearm's existence and operability and that Ercoli handled the firearm in the car. Both a firearm's existence and its operability may be inferred from the surrounding facts and circumstances. It is not necessary to admit the firearm used during the crime in evidence in order to establish a firearm specification. *State v. Vann*, 2d Dist. Montgomery No. 22818, 2009-Ohio-5308, ¶ 27, citing *State v. Murphy*, 49 Ohio St.3d 206, 551 N.E.2d 932 (1990). A victim's belief that the weapon is a gun, together with the intent on the part of the accused to create and exploit that belief for his or her own criminal purposes, is sufficient to prove a firearm specification. *Vann* at *id.*, citing *State v. Greathouse*, 2d Dist. Montgomery No. 21536, 2007-Ohio-2136. Moreover, actions alone, without verbal threats, may be sufficient circumstances to establish the operability of a firearm. *Vann* at ¶ 28.

**{¶25}** In this case, although the firearm was never recovered, both McDonald's cashiers reported that the assailant placed an order, drove around to the drive-thru window, and got out of his car, claiming his car window was broken. Each time the assailant approached the drive-thru window and pointed a gun at the cashier. During the December 13, 2015 robbery, Ercoli handed the cashier a demand note. The cashier described the gun Ercoli pointed at her as a black automatic handgun. She testified that she knew about guns because her boyfriend worked armed security and carried a similar firearm. She thought the gun was real and felt threatened and afraid.

**{¶26}** During the December 16, 2015 robbery, Ercoli attempted to hand the cashier a note. This cashier remembered the assailant carried a black gun in his right hand and a

note in his left hand. He pointed the gun at her but she ran away instead of taking the note. She believed the gun to be real and testified she felt afraid and threatened. The owner of the McDonald's looked at the surveillance video of the incident. He observed a man getting out of a silver car holding a gun and approach the drive-thru window.

{¶27} Based on these facts, the state provided sufficient evidence to support the convictions for improperly handling firearms in a motor vehicle and for the firearm specifications attendant to the aggravated robbery charges. The first assignment of error is therefore overruled.

{¶28} In the second assignment of error, Ercoli argues that his convictions were against the manifest weight of the evidence.

{¶29} When addressing a manifest-weight-of-the-evidence challenge, this court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *Thompkins*, 78 Ohio St.3d at 387, 678 N.E.2d 541.

{¶30} Ercoli contends that his convictions were against the manifest weight of the evidence because no one positively identified him as the assailant in the December 16, 2015 robbery.

{¶31} While it is true that the cashier was unable to identify her assailant, there was significant circumstantial evidence to connect Ercoli to the December 16, 2015

McDonald's robbery. Circumstantial evidence is that which can be "inferred from reasonably and justifiably connected facts." *State v. Fairbanks*, 32 Ohio St.2d 34, 289 N.E.2d 352 (1972), paragraph five of the syllabus. "[C]ircumstantial evidence may be more certain, satisfying and persuasive than direct evidence." *State v. Richey*, 64 Ohio St.3d 353, 595 N.E.2d 915 (1992). It is to be given the same weight and deference as direct evidence. *Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492. A defendant's convictions may be based on circumstantial evidence alone. *State v. Brown*, 12th Dist. Butler No. CA2014-12-257, 2015 Ohio 3407, ¶ 12.

{¶32} The cashier in the December 16, 2015 robbery provided the same description of a white male who pulled up past the drive-thru window just enough to open the front door. The cashier stated that the man stepped out of the car and used his right hand to point the gun at her while attempting to hand her a note with his left hand. Ercoli's former employer, Mike McKay, stated that he saw a news report of the December 16 robbery and immediately recognized the 2007 Hyundai Sonata as one that his shop had worked on in the past. Michael Pisano from Diversified Automotive testified to seeing a similar news report and immediately thinking the same thing. McKay testified to the lengths Ercoli went through to conceal his use of the Sonata in the week prior to McKay's retrieval of it. Once McKay confronted Ercoli, Ercoli admitted to using the car but told McKay that he had received permission from a friend to use it. Yet Ercoli told a different story to Detective Landrau the day after his arrest, telling the detective he had permission from McKay to use the car.

**{¶33}** In light of the above, we find that the jury did not lose its way and Ercoli's convictions were not against the manifest weight of the evidence. The second assignment of error is overruled.

**{¶34}** Judgment affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

LARRY A. JONES, SR., JUDGE

MARY EILEEN KILBANE, P.J., and
MARY J. BOYLE, J., CONCUR